

March 6 2012

Ed Smith
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 11-0374

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 49

---

STATE OF MONTANA,

Plaintiff and Appellee,

v.

RICHARD BOLLMAN,

Defendant and Appellant.

---

APPEAL FROM: District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DC 10-270C
Honorable Stewart E. Stadler, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Lane K. Bennett, Attorney at Law, Kalispell, Montana

For Appellee:

Steve Bullock, Montana Attorney General; Tammy A. Hinderman, Assistant Attorney General, Helena, Montana

Ed Corrigan, Flathead County Attorney; Lori Adams, Deputy County Attorney, Kalispell, Montana

---

Submitted on Briefs: January 11, 2012

Decided: March 6, 2012

Filed:

__________________________________________
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 Richard Bollman (Bollman) appeals two orders of the Eleventh Judicial District Court, Flathead County; one allowing expert testimony during his trial, and the other denying his motion for mistrial. We affirm.

## BACKGROUND

¶2 On March 15, 2011, Bollman was convicted of his fifth DUI offense, a felony, after a jury trial. He was sentenced to serve a 13-month commitment with the Department of Corrections (DOC), followed by a 4-year suspended commitment to the DOC.

### Bollman's Arrest

¶3 Columbia Falls Police Officer Craig McConnell (Officer McConnell) was on patrol in the early morning hours of August 6, 2010, when he noticed Bollman's white minivan drift out of its lane, into the center turn lane, then back into its lane of traffic. Officer McConnell followed the vehicle and observed continued drifting behavior. Bollman made a wide left turn without signaling, then slowed as if to pull over, but continued driving slowly. Officer McConnell activated his emergency lights and initiated a traffic stop.

¶4 Officer McConnell testified that, upon contacting Bollman, he could smell the "very strong" odor of alcohol, Bollman's speech was "mumbled and just kind of garbled," Bollman's eyes were bloodshot and watery, and Bollman's movements to get his registration and insurance information were slow and he fumbled around to retrieve the items.

¶5 Officer McConnell testified that he asked Bollman how much he had to drink, and Bollman said "way too much to be driving." At some point, Bollman asked Officer

McConnell to give him a break and take him home. Officer McConnell did not give Bollman a break, but rather asked Bollman to exit his vehicle. Bollman's movements were slow, he used the door for support, and was unsteady on his feet. Once Bollman was out of his vehicle, Officer McConnell asked him to perform standardized field sobriety tests, or SFSTs. Officer McConnell's vehicle had videotaping capabilities but no videotape, thus Bollman's SFSTs were not recorded. However, Officer McConnell documented Bollman's performance and testified that Bollman exhibited 6 out of 6 indicators on the horizontal gaze nystagmus (HGN) test, 3 out of 4 indicators on the one-leg stand test; and 8 out of 8 indicators on the walk-and-turn test. Based on his training and experience, Officer McConnell determined Bollman was intoxicated and placed him under arrest for DUI.

¶6 At the police station, which did have videotaping capabilities, Officer McConnell again asked Bollman to perform the SFSTs. Bollman said "This is the part where I'm supposed to ask for a lawyer, right? . . . 'Cause I'm screwed." When asked if he had any injuries or physical issues, Bollman stated he had rheumatoid arthritis, and takes Prilosec and Ibuprofen. Bollman refused to perform the SFSTs. Officer McConnell then read the implied consent advisory form to Bollman before asking him to take a breathalyzer test. Bollman refused to take a breathalyzer test.

¶7 Bollman disputes much of Officer McConnell's testimony. Bollman testified that he was drifting while driving because he was fiddling with his Walkman, which was on the passenger side visor. He testified his eyes were bloodshot and glassy because he worked all day in the wind at a bark plant, and that Officer McConnell could not have smelled alcohol

because he (Bollman) spilled diesel fuel on himself before he left work. He testified he was mumbling because he was nervous and his teeth were "all bad." He testified that he fumbled with his paperwork because his glove box was "full of junk." He testified that he was slow and unsteady because he was stiff and sore from working all day, and was suffering from arthritis. He testified that he did not say he drank too much to be driving, but rather said "no matter how much you have one beer is too much to be driving." He testified that he could not perform the one-leg stand test because of his arthritis, so he told Officer McConnell to "just take me to jail." Bollman denied performing the HGN test or walk-and-turn test. Bollman testified that he did not tell Officer McConnell he was "screwed" but rather said "I'm not going to get screwed, I just want a lawyer." Finally, he testified that he did not trust breathalyzer machines, so he refused the test.

**Expert Testimony on the HGN Test**

¶8 Prior to trial, the State gave notice that it intended to call Montana Highway Patrol Trooper Tim Proctor (Trooper Proctor) to testify as an expert regarding the correlation between alcohol consumption and nystagmus in the human eye, i.e. the scientific basis of the HGN test. Bollman objected to Trooper Proctor being designated as an expert, and also filed a motion in limine to exclude evidence of the administration and results of the HGN test unless the State produced a qualified expert.

¶9 On the first day of Bollman's trial, the District Court held a hearing to determine whether Trooper Proctor was qualified to testify as an expert witness. The jury was not

present for the hearing. Trooper Proctor testified, and was cross-examined by Bollman's trial counsel. After the hearing, the District Court made the following findings:

> [a]s an initial starting point this witness is not required to be a medical professional.
>
> Trooper Proctor's qualifications include an associate's degree in criminal justice with introductory courses in both anatomy and biology. He attended the law enforcement academy with 40 hours of basic HGN testing. He re-certifies yearly and has done so for the last four to five years. He's completed an advanced traffic course, which is required of all patrolmen, at the State Law Enforcement Academy. He has completed an Advanced Roadside Impaired Drivers course, which is a two-day course. He has successfully completed the drug recognition course, which included a two-day 16-hour ability to administer HGN, and then 1.5 weeks, or one-and-a-half weeks of classroom in which there was four hours -- four hours taught as to the scientific basis for HGN by a doctor of ophthalmology,[[1]] is what was testified to. He then would -- had a field certification, three days in Arizona, which included HGN, and a final exam of four to six hours. When he completed that course he then took the Prosecution of Drunk Drivers course, which also had a four-hour HGN component taught by the doctor of ophthalmology,[[2]] which both of these four hours went to the scientific basis of HGN.
>
> He's further testified that he has the ability to explain and will explain the concept and scientific basis of nystagmus and the correlation to alcohol consumption and nystagmus, to include natural nystagmus.
>
> Finally, he's been previously qualified in Flathead County Justice Court.
>
> Considering those findings, a review of the existing case law, and at least the credentials of the people that have been approved to do this, the Court does find that Trooper Proctor is qualified to testify to the result of the test that was given to the Defendant.

¶10 Trooper Proctor testified at trial to the same qualifications. The District Court then found him "qualified" as an expert regarding the scientific basis of the HGN test. He then testified about what horizontal gaze nystagmus (HGN) is, how the HGN test is administered,

[1] Dr. Citek is actually a doctor of optometry.

the correlation between alcohol and HGN, and the correlation between exhibiting 4 or more (of 6) indicators on the HGN test and the subject's approximate blood alcohol content. Trooper Proctor did point out that the result of the HGN test is not, itself alone, an indicator that a person is intoxicated. He said:

> the determination for a person's impairment level should be based on the totality of the circumstances. There should be a reason that we're asking that person to submit to standardized field sobriety tests, something that we've seen that's aroused our suspicion. And it's – the standardized field sobriety tests are a battery of three tests, not any one of which is a stand-alone test.

**Bollman's Motion for Mistrial**

¶11 Prior to the trial, the State filed a motion in limine to prohibit Bollman and defense counsel from referring to the charge in this case as a felony, or referencing the possible penalty for felony DUI. Bollman did not oppose the State's motion. Bollman filed a motion in limine pursuant to M. R. Evid. 404(b) to exclude "the mention or testimony regarding other offenses, wrongs or acts besides those charged." The State did not oppose Bollman's motion. Both motions were granted.

¶12 During the course of Officer McConnell's testimony, the following occurred:

> Q. [by prosecutor]: Okay. You also testified that you weren't sure if you had transported the Defendant to the Detention Center or if another officer had done that.
> A. [Officer McConnell]: Usually with felony DUIs –
> [Defense Counsel]: Objection, Your Honor.
> [Defense Counsel]: May we approach, Your Honor?
> The Court: You may.

---

[2] Again, Dr. Citek is a doctor of optometry, not ophthalmology.

¶13 After a discussion at the bench, the prosecutor continued with a new line of questioning. Once Officer McConnell finished testifying, and outside the presence of the jury, the following exchange occurred:

> The Court: With regards to his comment, which I don't think was solicited by the State, it was something that the officer testified to, you can make whatever motions you wish, or you can request an instruction.
>
> I guess my feeling is is to stop and give them some type of a cautionary instruction on why not to consider this as a felony is like asking them not to think about pink elephants, it's the first thing that goes into the jury room. Sometimes I think whatever's left unsaid, if it's just glossed over, becomes -- but it's up to you guys to do whatever. They were precluded from raising that issue, and they certainly did raise it.
>
> [Defense Counsel]: Right. And I think, you know, we would ask the Court -- obviously I don't have access to anything right now -- to do some kind of limiting instruction or –
>
> The Court: Let me ask you a question, Ms. Nolan. What do you have for witnesses?
>
> [Defense Counsel]: We just have Mr. Bollman.
>
> The Court: And you anticipate him to be how long?
>
> [Defense Counsel]: Just for my direct exam?
>
> The Court: Uh-huh.
>
> [Defense Counsel]: Half an hour, if even.
>
> The Court: We will do it today and then we will rest for tonight and come back in the morning for cross-examination, and at that time if you have motions to file or whatever you think would be an adequate remedy I'll entertain it then. But I would suggest that the officer's testimony would -- was not that this case was -- he said something that when we transport a felony, if memory serves me correct. Again, I don't know, it's up to you people what you wish. And then we will let the State respond.

¶14 After the exchange, the jury was brought back and the State rested its case. Bollman took the stand in his own defense. The defense rested its case after Bollman's testimony. Once the jury was excused for the evening, the District Court stated:

> The Court: With regards to the reference to the felony DUI, it would seem that this was not testimony that was elicited by the State, it was something that just was -- came out with Officer McConnell. And what I would be more interested in anything is if you feel an instruction to be given, which should be given such as although there might be speculation that there are prior or other offenses these are not to be considered, something along those lines. But we'll see you in the morning with whatever you have.
>
> [Defense Counsel]: Thank you, Your Honor.

Shortly thereafter, court ended for the day.

¶15 The next day, after the jury instructions were settled, the District Court allowed either party to make any motions they wished to make. Defense counsel moved for a mistrial, stating:

> I believe yesterday that Officer McConnell did mention the word felony, violating the State's own motion in limine that said that it wasn't supposed to mention the word felony. Even though it wasn't elicited by the State I think the prejudicial effect is still the same, and for those reasons we'd request we be granted a mistrial.

¶16 The State responded, arguing:

> The statement from Officer McConnell was not elicited on a direct question from Ms. Von Jentzen. I think as Your Honor could tell she was surprised by the answer. He did not get the full answer out, as soon as he said the word felony it was shut off and we went to side-bar. Ms. Von Jentzen then came over and moved to a totally different topic. We don't think that that mention is enough to cause a mistrial in this case, we think that if the Defense had wanted they could have given a limiting instruction, they decided not to, and that would have been the remedy, not a mistrial.

¶17 The District Court did not rule on Bollman's motion at that time. Once the case was submitted to the jury, the District Court denied Bollman's motion finding:

> [T]he Court's, I guess, feeling is that the comment was not solicited by the State, it was something that was done inadvertently, or without plan or design by the State. The mere mention of the word felony is not sufficiently prejudicial that I think that it would cause this Court to grant a mistrial.
>
> I think the Defense had an opportunity to do a curative instruction if they so desired. I agree with the Defense that that would just reinforce it, but I think that was the proper remedy if a remedy at all was proper, and the motion is denied.

¶18 Bollman was convicted and filed this timely appeal. Bollman raises two issues on appeal, restated as follows:

¶19 *Issue One: Did the District Court abuse its discretion when it found Trooper Proctor was qualified to testify as an expert about the correlation between alcohol consumption and horizontal gaze nystagmus (HGN)?*

¶20 *Issue Two: Did the District Court abuse its discretion when it denied Bollman's motion for mistrial?*

¶21 We address each in turn.

## STANDARDS OF REVIEW

¶22 We review the district court's determination regarding the qualification and competency of an expert witness for an abuse of discretion. *State v. Harris*, 2008 MT 213, ¶ 6, 344 Mont. 208, 186 P.3d 1263. The trial court has "*great* latitude" in ruling on the admissibility of expert testimony. *State v. Crawford*, 2003 MT 118, ¶ 30, 315 Mont. 480, 68 P.3d 848 (emphasis in original).

¶23 We also review the denial of a motion for mistrial based upon the admission of inadmissible evidence for an abuse of discretion. *State v. Gerstner*, 2009 MT 303, ¶ 16, 353 Mont. 86, 219 P.3d 866. A district court abuses its discretion when it acts arbitrarily without employing conscientious judgment, or exceeds the bounds of reason resulting in substantial injustice. *Harris*, ¶ 6.

## DISCUSSION

¶24 *Issue One: Did the District Court abuse its discretion when it found Trooper Proctor was qualified to testify as an expert about the correlation between alcohol consumption and horizontal gaze nystagmus (HGN)?*

¶25 Bollman argues that Trooper Proctor did not possess the necessary qualifications to testify as an expert on the scientific basis of the HGN test; "[s]pecifically, his training beyond basic training was not specialized or specific enough." The State argues that there is no list of required credentials, and Trooper Proctor's credentials are similar to those we have previously held sufficient.

¶26 Before the results of the HGN test are admissible, the State must present expert testimony to explain the correlation between alcohol consumption and the presence of nystagmus, i.e. the scientific basis of the HGN test. *Hulse v. State*, 1998 MT 108, ¶¶ 69-72, 289 Mont. 1, 961 P.2d 75; *State v. Michaud*, 2008 MT 88, ¶ 33, 342 Mont. 244, 180 P.3d 636.

¶27 We have established no "essential requirements" the witness must possess to testify as an expert on HGN. *Harris*, ¶ 10. We have specifically rejected the requirement that the proposed expert must be a medical professional. *Harris*, ¶ 10; *Crawford*, ¶ 27. It is clear

that basic training on SFSTs is not sufficient to qualify the officer as an expert on the scientific basis of the HGN. *Hulse*, ¶¶ 71-72. We have also found that basic SFST training, plus a bachelor's degree in medical technology and work as a lab technician at the Montana State Hospital, did not qualify an officer as an expert on the scientific basis of the HGN test. *State v. Van Kirk*, 2001 MT 184, ¶ 28, 306 Mont. 215, 32 P.3d 735.

¶28 We have found the following qualifications, in various combinations, significant: years as a law enforcement officer; relevant college degrees and/or course work; DUI and impairment training, including administration and evaluation of SFSTs; certification as a SFST instructor; certification as a drug recognition expert (DRE); specialized training in eye anatomy and the science behind HGN; study in these areas; and previous qualification as an expert in the underlying scientific basis for the HGN test. *Harris*, ¶¶ 11-12; *Crawford*, ¶ 28. We described the officer's training and education in *Crawford* as "extensive." *Crawford*, ¶ 30.

¶29 Trooper Proctor's credentials are similar to those in *Harris* and *Crawford*. Trooper Proctor's qualifications include: 1) an associate's degree in criminal justice with introductory courses in both anatomy and biology; 2) basic training at the Montana Law Enforcement Academy on SFSTs; 3) yearly recertification in SFSTs; 4) completing the Advanced Traffic Enforcement Academy; 5) completing a 2-day Advanced Roadside Impaired Driving Enforcement course, which includes written and practical evaluations of SFST administration; 6) certification as a DRE; 7) completing 8 classroom hours dedicated specifically to the science behind the HGN test, taught by a doctor of optometry; 8) 3.5 years

as a Montana Highway Patrol Trooper, including over 100 DUI arrests; 9) continued personal study on the science of HGN; and 10) prior qualification as an expert.

¶30 Based on these qualifications, we conclude that the District Court did not abuse its discretion when it found that Trooper Proctor was qualified under M. R. Evid. 702 to testify as an expert on the scientific basis of the HGN test.

¶31 *Issue Two: Did the District Court abuse its discretion when it denied Bollman's motion for mistrial?*

¶32 Bollman argues the District Court should have granted his motion for mistrial after Officer McConnell referenced "felony DUIs" during questioning by the State because the reference was prejudicial and contributed to his conviction. The State argues that the single, unsolicited remark did not prejudice Bollman or render his trial unfair.

¶33 A district court's decision to grant or deny a motion for mistrial must be based on whether the defendant has been denied a fair and impartial trial. *State v. Weldele*, 2003 MT 117, ¶ 75, 315 Mont. 452, 69 P.3d 1162. Where there is a reasonable possibility that inadmissible evidence might have contributed to the conviction, a mistrial is appropriate. *Weldele*, ¶ 75; *State v. Giddings*, 2009 MT 61, ¶ 82, 349 Mont. 347, 208 P.3d 363. In determining whether a prohibited statement contributed to a conviction, we consider the strength of the evidence against the defendant, the prejudicial effect of the testimony, and whether a cautionary instruction could cure any prejudice. *Weldele*, ¶ 75; *Giddings*, ¶ 82; *State v. Partin*, 287 Mont. 12, 18, 951 P.2d 1002, 1005-06 (1997).

¶34 After reviewing the facts and circumstances of this case, we conclude there is no reasonable possibility that Officer McConnell's statement contributed to Bollman's conviction. We note that the statement was not solicited by the State, but appears to be an inadvertent remark by Officer McConnell. However, it is undisputed that Officer McConnell's statement was inadmissible in light of the District Court's ruling on the State's motion in limine. We therefore begin by analyzing the strength of the evidence against Bollman. Unlike *Partin*, in which an officer's inadmissible statement was "the only link between Partin and the offense[,]" 287 Mont. at 18, 951 P.2d at 1006, here, disregarding Officer McConnell's statement about "felony DUIs," there was ample evidence against Bollman including his driving behavior, his performance on the SFSTs, and his own statements.

¶35 We next consider whether the statement was prejudicial. The standard for establishing prejudice is whether a substantial right was denied. *State v. Brush*, 228 Mont. 247, 250-51, 741 P.2d 1333, 1335 (1987). Bollman argues the statement was evidence of his prior DUI convictions. While it is true that felony DUI requires at least 3 prior DUI convictions (see § 61-8-731, MCA), Officer McConnell did not inform the jury of any of Bollman's criminal history. The statement cannot reasonably be seen as evidence of Bollman's criminal history or prior bad acts. The statement was not "drawn out by the county attorney" nor was the information graphic or detailed. *Brush*, 228 Mont. at 251, 741 P.2d at 1335. Under the circumstances of this case, we conclude any prejudice resulting from the statement was very minor, if it was prejudicial at all.

¶36 Finally, we consider whether a cautionary instruction could have cured any possible prejudice. Bollman argues that any cautionary instruction would only reinforce the inadmissible testimony, and that the District Court agreed with Bollman's decision not to seek a cautionary instruction. We have specifically rejected the argument Bollman now makes. *Brush*, 228 Mont. at 251-52, 741 P.2d at 1335-36. Additionally, no matter what the District Court thought of Bollman's decision, the fact remains that Bollman opted not to seek a cautionary instruction. We will not hold the District Court in error for failing to give a cautionary instruction. *In re Marriage of Caras*, 2012 MT 25, ¶ 22, 364 Mont. 32, ___ P.3d ___ (we will not hold a district court in error for a ruling or procedure in which the appellant acquiesced).

¶37 After reviewing the facts and circumstances of this case, we conclude there is no reasonable possibility that Officer McConnell's statement contributed to Bollman's conviction. The District Court did not abuse its discretion when it denied Bollman's motion for mistrial.

**CONCLUSON**

¶38 For the reasons stated above, we affirm.

/S/ MICHAEL E WHEAT

We Concur:

/S/ BETH BAKER

/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS