DA 15-0238

# IN THE SUPREME COURT OF THE STATE OF MONTANA

2018 MT 91

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

CARL MELVIN ANKENY,

      Defendant and Appellant.

APPEAL FROM:     District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause Nos. DC 13-249 and DC 13-250
Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Chad Wright, Appellate Defender, Eileen A. Larkin, Assistant Appellate Defender Helena, Montana

      For Appellee:

            Timothy C. Fox, Montana Attorney General, Mardell Ployhar, Assistant Attorney General, Helena, Montana

            William E. Fulbright, Ravalli County Attorney, Meghann Paddock, Deputy County Attorney, Hamilton, Montana

Submitted on Briefs:  January 17, 2018

Decided:  April 17, 2018

Filed:

                                Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Carl Melvin Ankeny appeals his jury conviction for assault with a weapon, two counts of partner or family member assault (PFMA), and unauthorized use of a motor vehicle in the Twenty-First Judicial District, Ravalli County. We affirm, and address the following issues:

1. *Did the District Court err by granting the State's motion to join the first and second cases for trial, after a mistrial in the first case?*

2. *Did the District Court err by admitting letters Ankeny wrote to the victim from jail?*

3. *Did the District Court err by denying Ankeny's motion for a mistrial?*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶2     Ankeny and his then-fiancée, Vonnie, spent a day in April of 2012 fishing and drinking beer. When they got home that night, Ankeny became upset because Vonnie's dog had gone to the bathroom on the floor while they were out. Ankeny threw Vonnie on a bed and started hitting her with an open hand. Ankeny got a knife, cut Vonnie's clothes, and stabbed the bed while Vonnie was on it. Vonnie tried kicking Ankeny to get away, but Ankeny choked her until she lost consciousness. When she regained consciousness, Vonnie tried to run away, but Ankeny grabbed her hair, threw her on the bed again, and choked her until she lost consciousness two more times. Vonnie testified that she was scared for her life and stayed in the bed with Ankeny the rest of the night. She testified she did not then leave the relationship because she was afraid and did not know where to go.

¶3     On May 1, 2012, Ankeny and Vonnie again spent the day fishing and drinking beer. When they returned home, Ankeny again became angry because Vonnie's dog had gone to

2

the bathroom on the floor. Ankeny yelled at Vonnie and threw drinking glasses at the wall. He took her phone out of her pocket and elbowed her in the face. Vonnie testified she believed Ankeny was going to get a knife, so she ran from the house and hid in a nearby park. Ankeny got into Vonnie's car and drove around, but was unable to find her. When Vonnie later returned home, Ankeny was gone, along with her car and dog.

¶4    Vonnie's friend, Barb, came to assist Vonnie. Concerned about the return of her car and dog, Vonnie contacted police. Officer Tod Wofford responded, and after learning that Ankeny had elbowed Vonnie's face, he initiated a PFMA charge against Ankeny. Vonnie told Officer Wofford that she was afraid for her safety if charges were filed against Ankeny. Vonnie did not tell Officer Wofford about the April incident and stated no similar altercations had previously occurred between her and Ankeny, although she said Ankeny had been violent to others in the past. Vonnie stayed with Barb, and eventually returned home to discover her dog had been returned, but that her car was gone.

¶5    A week later, Ankeny was arrested near Missoula for driving under the influence and driving the wrong way on the interstate highway. He was driving Vonnie's car. A few days after Ankeny's arrest, he began writing letters to Vonnie from jail, and continued to do so for several months. Vonnie wrote back a few times, testifying that during this time period she was confused and uncertain about her relationship with Ankeny. After a few months, Vonnie decided she needed to end the relationship. Ankeny sent his last letter in December 2012. In January 2013, Vonnie disclosed the April 2012 incident to Sergeant Matt Cashell, providing the knife Ankeny had used and other physical evidence. Vonnie

3

explained she did not initially disclose the April incident to police because she feared Ankeny.

¶6    In December 2013, the State filed an information in case number DC 13-249 (hereinafter "the first case"), charging Ankeny with assault with a weapon, criminal endangerment, and PFMA for the April 2012 incident. At the same time, the State filed an information in case number DC 13-250 (hereinafter "the second case") for PFMA, failure to maintain violent offender registration,[1] and unauthorized use of a motor vehicle for Ankeny's May 2012 conduct.

¶7    An omnibus hearing was held in both cases in January 2014. In its memorandum for the first case, the State indicated no pretrial motions would be filed, including those listed in § 46-13-110, MCA, which includes joinder under § 46-11-404, MCA. In its memorandum for the second case, the State expressed an intention to file a motion to sever the failure to register charge from the other charges. The deadline for motions was February 19, 2014. On April 30, 2014, the State moved to sever the failure to register charge from the second case, which was granted by the District Court and transferred to case number DC 14-401. The State did not move for joinder of the first and second case.

¶8    The first case, involving the April 2012 incident, was tried to a jury in June of 2014. Before trial, the State agreed to exclude any reference to the May 2012 incident, as well as the contents of Ankeny's letters from jail, if Ankeny would not challenge Vonnie's

---

[1] Ankeny has four prior PFMA convictions from 1993 to 2009, and has been declared a persistent felony offender. *See State v. Ankeny*, 2010 MT 224, 358 Mont. 32, 243 P.3d 391.

credibility for her nine-month delay in reporting the April 2012 assault. Although Ankeny's strategy was to attack the credibility of Vonnie's claims, he did not base his attack on Vonnie's nine-month delay in reporting the incident. Sergeant Cashell testified that he interviewed Vonnie regarding her relationship with Ankeny, and that Vonnie had provided physical evidence related to the April 2012 assault, including a knife, and letters written by Ankeny. The content of letters, and the fact that Ankeny had written them from jail, were not disclosed.

¶9 The jury was unable to reach a verdict and the court declared a mistrial. The Jury Foreman volunteered the following statement before the jury was dismissed:

> Your Honor, if you will permit, and I think I can speak for all the jurors, with all due respect for the officers of the court and your good intentions, we feel that if both the prosecution and defense had done a more adequate job, it would have made our ability better to render decisions on any of those charges. Unfortunately, we felt that wasn't the case, and that got us where we are here. Thank you for letting me make that statement.

The State contacted several jurors after the trial, and learned that the jury had reached its own conclusion that Vonnie had significantly delayed reporting the April 2012 incident, which contributed to their inability to reach a verdict.

¶10 The State then moved to join the first and second case. Ankeny opposed joinder because "stacking" the PFMA charges would have a cumulative prejudicial effect, and because he wanted to retain the option of presenting different defense strategies for each offense. However, the District Court granted the motion, reasoning that the two crimes were "remarkably similar," as the charges were brought under the same statute, involved

the same victim, same location, same or similar *modus operandi*, and were committed a short time apart, and that joinder was in the interests of justice.

¶11    The second trial was held in July of 2014.  At the pretrial conference, the State sought leave to introduce several of the letters Ankeny wrote to Vonnie from jail, arguing they included possible admissions, were attempts to influence Vonnie not to advance the PFMA charges, explained Vonnie's delayed disclosure of the April assault, and demonstrated the domestic violence cycle of Ankeny's control over Vonnie.  Ankeny objected on Rule 403 grounds, noting prejudicial references to Ankeny being jailed in Missoula for DUI, references to violent behavior, and references to a prior prison term.  He asked that the letters be excluded if he did not attack Vonnie's credibility based on her delayed reporting, as in the first trial.  Alternatively, he asked that the letters be redacted, or that portions of the letters be read so the jury would not know about the redactions.  The State opposed redaction, arguing the references to Ankeny's prior acts were interwoven through the letters, making it difficult to redact the letters without giving the inference that something was being hidden, as in the first trial.  The District Court admitted the letters, unredacted, concluding the contents were relevant and agreeing that redaction would be difficult.

¶12    Five letters were submitted to the jury.  Ankeny's apologies to Vonnie were intermixed with pleadings for her favor and assistance with the charges, as well as comments related to prior acts, as illustrated by this passage:

> Hello my love . . . . I am sorry for everything that has happened Buggy, I
> love you with all my heart and I miss you more than ever.  I am glad that I

6

got to hear your voice on the phone, it put me at ease. I know that my mess sounds like the worst in the world but it really isn't. I have the criminal endangerment charges but they will be dropped down, I just have to sit here and wait. I also requested that I stay here for all court stuff so I am close to you. I know that I was going to get violated, just not like this. I pray that you will still stick by me. I really do love you and I will do everything that I have to get back to you. I really want to be the man you fell in love with again. I really am asking you for that chance . . . . I really do need you in my life because you are my world. I fell completely in love with you. I am sorry for all the wrongs I have done. Our moving had also brought on a lot of stress for one I knew it was violating, I just didn't know when. I was on my way home when this mess I am in happened. I left there because of the paperwork you left on the kitchen table, which only you can fix and I hope you do, it is a worse situation than this one by far. Right now I have to take care of this, I am in panic mode because I don't want to lose my Buggy. I miss our puppy too . . . . I will do everything to improve myself for us Buggy, any groups, counselling, anything. I would even get on medication for us. I just don't want to lose you Buggy. I know that our love for each other is strong. You told me several times that you would wait for me, I hope it is true, you will be the first real person that I have ever had and so far, you have been perfect. I am going to use this time to improve myself and focus on you and us, that will keep me going and not give up and the charges will get dropped, that are nonsense. I did not know I was on the wrong side of the road when this happened. I haven't even been charged with a DUI as of yet. I was also hit in the head with something, within a 5 minute time frame of this all happening. I just wanted to get home to my wife. I do love you with all my heart and I mean that 100%. I hope you are the same. I take the blame for all our problems. I am so sorry Buggy. I will be much different, the man you met and fell in love with. I will write to you every chance I get Buggy and I hope you will do the same . . . . I really hope that you come see me the first chance you get. This won't kill us Buggy, it will only make us a stronger couple. That's for sure. I told you I wanted to grow old together and I really really meant it. I will keep out of trouble and keep you in my thoughts here 24-7 . . . . I won't stop fighting this until I win Buggy, I won't lose you . . . . I know you are true Buggy, I miss you so very very much. Will you please write me all you can. I stand at mail pass every day . . . . I do have a lot to say, I will tell you more in the next letter. I love you Buggy, kiss.

Other letters stated:

I hope that you took care of the mess over there. I don't need any more charges. And I couldn't get out of that without you helping for sure . . . . Then

I will go to my violation hearing, at Deerlodge, and either have to go to a program or get put back out . . . . I am praying that you took care of the thing over there, I have no charges so that's a good sign.

.   .   .

I fear another prison term . . . . My drinking is all over too, I can't be putting you through hell, it is not fair to do that to the person you love. They always say we hurt the ones closest to us the worst.[2]

.   .   .

¶13 Sergeant Cashell testified that the letters demonstrated manipulative behavior that exists in domestic violence relationships, and explained the patterns of domestic violence. On cross-examination, Ankeny's attorney suggested that Ankeny was referencing his drunken driving, as opposed to the alleged assaults, when making the apologies. The District Court gave a cautionary instruction regarding the contents of the letters:

The State has offered letters of the Defendant that reference that he may have engaged in other crimes at another time, specifically driving while intoxicated in Missoula County. That evidence was not admitted to prove the character of the Defendant or to show he acted in conformity therewith. The only purpose of admitting that evidence was that the State asserts those letters contain admissions by the Defendant that he committed the offenses in this case. The Defendant denies this. You are the sole judge of what those letters mean.

The Defendant is not being tried for that other crime. He may not be convicted for any other offense than that charged in this case. For the jury to convict the Defendant of any other offense than that charged in this case would result in unjust double punishment of the Defendant.

¶14 Deputy Wofford testified about responding to Vonnie's call following the May 2012 incident. During the State's re-direct examination, he stated:

---

[2] Some spelling and grammar corrected for readability.

8

Q. When you were talking with [Vonnie], was she forthcoming about why she felt threatened?

A. Yes.

Q. What did you learn?

A. Eventually, while talking with Vonnie, she had said that she knew that [Ankeny] had been violent in the past and that that's why she feared when he went for the knives, that she thought something may happen.

Ankeny did not object. During Ankeny's re-cross examination, Wofford stated:

Q. My knowledge of your report is that, as she had stated in there, that there had never been any incidents between herself and [Ankeny]; is that correct?

A. Correct, [Vonnie] said there had never been any physical disturbance between her and [Ankeny], but she knew of previous engagements where he was violent towards other people.

Ankeny's counsel moved for a mistrial on the ground Wofford had referenced a prior bad act. The State responded that the testimony was admissible to show Vonnie's state of mind. The District Court denied the motion for a mistrial, reasoning that because the testimony was vague and lacked specifics, a cautionary jury instruction would cure the reference. The District Court provided the following cautionary instruction:

Ladies and Gentlemen, just before the break there was some testimony regarding possible prior bad-acts that the defendant may or may not have committed prior to the incidents that gave rise to these charges. I believe the purpose of that evidence was to not necessarily show what happened in the past, but to show the state of mind that the complaining witness was in, what she believed the defendant might be capable of and so forth.

But you need to bear in mind that the defendant is not on trial for anything he may have done in the past prior to these incidents that gave rise to these charges, and he is not to be convicted of any other offense other than what he is charged with. And to do that would potentially result in unjust double punishment of the defendant. So you should only consider that evidence,

9

again, just as potential evidence of the complaining witness's state of mind and for no other purpose.

¶15 The jury found Ankeny guilty of assault with a weapon, two counts of PFMA, and unauthorized use of a motor vehicle. The jury found Ankeny not guilty of criminal endangerment. Ankeny appeals.

## STANDARD OF REVIEW

¶16 We review all three issues for abuse of discretion. A district court's determination of whether to grant relief from waiver under § 46-13-101(3), MCA, is reviewed for abuse of discretion, *State v. Vonbergen*, 2003 MT 265, ¶¶ 18-19, 317 Mont. 445, 77 P.3d 537, as is a district court's decision to join a trial pursuant to §§ 46-13-210 and 46-11-404, MCA, *State v. Enright*, 2000 MT 372, ¶ 12, 303 Mont. 457, 16 P.3d 366 (citations omitted).[3] A district court has broad discretion when determining the relevance and admissibility of evidence, and we thus generally review evidentiary rulings for abuse of discretion. *State v. Lotter*, 2013 MT 336, ¶ 13, 372 Mont. 445, 313 P.3d 148 (citations omitted). We review a district court's ruling on a motion for a mistrial for abuse of discretion. *State v. Criswell*, 2013 MT 177, ¶ 48, 370 Mont. 511, 305 P.3d 760 (citations omitted). An abuse of discretion is only found if the district court acted arbitrarily without the employment of

---

[3] We review whether counts were properly joined in an information *de novo*. *State v. Freshment*, 2002 MT 61, ¶ 22, 309 Mont. 154, 43 P.3d 968 (citations omitted). Appellant argues that the District Court's joinder decision should likewise be reviewed *de novo*. We decline, as joinder is governed by statute and our case precedent as a discretionary decision of the trial court.

conscientious judgment, or exceeded the bounds of reason resulting in substantial injustice.

*Criswell*, ¶ 42 (citations omitted).

## DISCUSSION

¶17 *1. Did the District Court err by granting the State's motion to join the first and second cases for trial, after a mistrial in the first case?*

¶18 Technically, there are two separate inquiries to this issue, although they are factually related here. The first is whether the District Court erred by finding good cause to allow the State to move to join the first and second cases after it had initially waived that opportunity. The second is whether the District Court properly granted the State's joinder motion on its merits.

### a. Good cause

¶19 The parties agree that the State initially waived its opportunity to seek joinder of the first and second case by not raising it at or before the omnibus hearing. The governing statutes provide:

> Except for good cause shown, any defense, objection, or request that is capable of determination without trial of the general issue must be raised at or before the omnibus hearing unless otherwise provided by Title 46.

Section 46-13-101(1), MCA. Parties must be prepared to discuss pretrial matters, including joinder of offenses, at the omnibus hearing, and failure to do so constitutes waiver:

> The prosecutor and the defendant's counsel shall attend the [omnibus] hearing and must be prepared to discuss any pretrial matter appropriate to the case, including but not limited to: (a) joinder and severance of offenses or defendants . . . .

Section 46-13-110(3)(a), MCA.

11

> Failure of a party to raise defenses or objections or to make requests that must be made prior to trial, at the time set by the court, constitutes a waiver of the defense, objection, or request.

Section 46-13-101(2), MCA; *see also Vonbergen*, ¶ 11 (parties are statutorily mandated to raise issues capable of determination without trial of the general issue at or before the omnibus hearing, or a later date set by the court; a failure to do so constitutes waiver). The purpose of requiring an early determination of pretrial motions is to provide for the "orderly and fair administration of the criminal justice system." *Vonbergen*, ¶ 16 (citations omitted).

¶20 However, consistent with this purpose, the district court may grant relief from waiver:

> The court, for cause shown, may grant relief from any waiver provided by this section. Lack of jurisdiction or the failure of a charging document to state an offense is a nonwaivable defect and must be noticed by the court at any time during the pendency of a proceeding.

Section 46-13-101(3), MCA. Interpreting § 46-13-101(1) and (3) together, we have held that relief from waiver requires a showing of good cause. *See, e.g.*, *Vonbergen*, ¶ 18. "When considering whether to grant relief from a waiver, a district court 'retains the authority to control the progress of the case, and may, within its discretion, grant or deny the requested relief, as it deems appropriate.'" *State v. Adkins*, 2009 MT 71, ¶ 19, 349 Mont. 444, 204 P.3d 1 (citations omitted).

¶21 We have not adopted a definitive standard for determining good cause for waiver, stating simply that the question "is fact-specific and falls under the sound discretion of the district court." *Vonbergen*, ¶ 19. We held that the District Court did not err in finding good cause did not exist to excuse waiver when defense counsel was aware of facts

12

supporting a motion in limine to exclude a witness identification at the time of the omnibus hearing, but failed to raise the issue because of a busy caseload. *State v. Greywater*, 282 Mont. 28, 37, 939 P.2d 975, 980 (1997). Also, the District Court had initiated contact with counsel about possible trial issues shortly before trial, but defense counsel did not raise the issue. *Greywater*, 282 Mont. at 37, 939 P.2d at 980. We have also held that the District Court did not abuse its discretion by determining there was not good cause for untimely motions when new counsel merely wanted to change trial strategy. *Vonbergen*, ¶ 23.

¶22 Ankeny argues the State failed to show good cause for relief from its waiver. He asserts the State's untimely request was, like *Vonbergen*, merely a change in trial strategy—from trying the cases separately to "stacking" the offenses as part of a common scheme. He argues there were no relevant facts that the State did not know at the time it initially waived its joinder motion, as in *Greywater*.

¶23 However, the State's post-omnibus request here was not merely a change in trial strategy. Feedback received after the first trial revealed that juror confusion had arisen from the narrow focus of the first trial, hindering the effort to reach a verdict. Though not mentioned, the jury deduced that Vonnie had long delayed her report of the April 2012 assault, causing a concern, expressed by the Jury Foreman, about whether the case had been forthrightly presented. This concern was something the State did not know at the time of its waiver. Further, joinder certainly promoted judicial economy, as one less trial arising out of Ankeny's actions would be required, three instead of four, and the victim and other witnesses would need to testify at one less trial. We conclude the District Court was

13

properly exercising its authority to control the progress of its cases when it granted relief

from the State's waiver, and did not abuse its discretion by arbitrarily exceeding the bounds

of reason.[4]

**b.** *Joinder*

¶24 Courts may try "informations" together, as governed by statute:

> The court may order two or more indictments, informations, complaints, or defendants to be tried together if the interests of justice require and the charges or defendants could have been joined in a single indictment, information, or complaint as provided for in 46-11-404.[5]

---

[4] The Dissent argues that the District Court did not expressly find good cause to grant relief from the State's waiver in its joinder order, and would thus reverse and remand. Dissenting Opinion, ¶ 45. However, although we have here divided the good cause and joinder inquiries to properly apply the governing statutes, Ankeny did not argue before the District Court that the State waived joinder and lacked good cause for its waiver, he argued only that joinder would constitute an impermissible amendment of the information, and be prejudicial. Good cause is a response to the defense of waiver, which was Ankeny's burden to raise, but he did not. Indeed, Ankeny did not mention the State's waiver at all, and may arguably have forfeited the issue. The District Court's brief order addressed only the arguments the parties actually made.

In his opening brief, Ankeny neither argues that the District Court failed to make an express finding of good cause, nor that the State failed to raise § 46-13-101(3), MCA, before the District Court. Although credited by the Dissent, Ankeny argued these points for the first time in the entire proceeding in his reply brief. *See State v. Porter*, 2018 MT 16, ¶ 16, n. 1, 390 Mont. 174, 410 P.3d 955 (citations omitted) ("This Court will not entertain an argument first raised in a reply brief."). Ankeny's opening appellate argument that there was not good cause to grant relief from waiver certainly assumes the District Court found such good cause in granting the State's motion. The State has answered these arguments by discussing the existence of good cause on the merits, rather than arguing that Ankeny failed to preserve the issue. Consequently, we are resolving the issues upon this record and upon the arguments here made.

[5] Section 46-11-404(1), MCA, provides in part:

> Two or more offenses . . . may be charged in the same charging document in a separate count, or alternatively, if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same transactions connected together or constituting parts of a common scheme or plan.

14

Section 46-13-210, MCA. We have held that, to determine if joinder is in the interest of justice, the district court must weigh the State's interest in judicial economy against the defendant's right to a fair trial. *Enright*, ¶ 12 (citations omitted). We have recognized this as the same balancing test provided by Montana's severance statute:

> If it appears that a defendant or the prosecution is prejudiced by a joinder of charges or defendants in an indictment, information, or complaint or by a joinder for trial together, the court may order separate trials, grant a severance of defendants, or provide whatever other relief justice requires.

Section 46-13-211(1), MCA; *see also Enright*, ¶ 12 ("The decision to join or sever a trial is within the discretion of the trial court."). This statute requires trial courts to balance the possibility of prejudice to a criminal defendant against the judicial economy resulting from a joint trial. *State v. Southern*, 1999 MT 94, ¶ 28, 294 Mont. 225, 980 P.2d 3 (citations omitted). In striking this balance, considerations of judicial economy "exert strong pressure in favor of joint trials." *Enright*, ¶ 12 (citations omitted). "Joint trials speed the administration of criminal justice, conserve judicial time, lessen the burden on prospective jurors[,] and obviate the necessity of recalling witnesses." *Enright*, ¶ 12.

¶25 It is the defendant's burden to prove prejudice, which must be more than merely "some prejudice," such as a better chance of acquittal if separate trials were held. *Southern*, ¶ 29 (citations omitted); *Enright*, ¶ 12 (citations omitted). Rather, "the defendant must show the prejudice was so great as to prevent a fair trial." *Enright* ¶ 12 (citations omitted);

---

Ankeny does not contest that the "same or similar character" requirement under § 46-11-404, MCA, was met here.

15

*see also Southern*, ¶ 29 (citations omitted).  We have identified three types of prejudice that may result from consolidating charges:

> First, a jury may consider the criminal defendant facing multiple charges a "bad man" and accumulate evidence until it finds the defendant guilty of something.  Second, a jury may use proof of guilt on one count to convict the defendant of a second count even though that proof would be inadmissible at a separate trial on the second count.  Third, the defendant may be prejudiced if he or she wishes to testify on one charge but not on another.

*Southern*, ¶ 30 (internal quotations and citations omitted).  We have rejected a general and unsupported assertion of the cumulative effect of evidence as sufficient to demonstrate prejudice, particularly if it cannot be stated that there was insufficient evidence for a jury to find the defendant committed each offense.  *Freshment*, ¶ 30; *Southern*, ¶ 32.

¶26    Ankeny argues he was substantially prejudiced under all three types of prejudice referenced in *Southern*.  Under the first, Ankeny argues the State used joinder to paint him as a "bad man" with a history of violence.  Under the second, Ankeny argues joinder brought admission of the letters in the second trial, but had been excluded in the first trial.  Under the third type of prejudice, Ankeny asserts he may have wanted to testify in one case but not in another.

¶27    Ankeny's arguments are not compelling under the facts here.  The charges involved similar alleged actions involving the same parties, making them appropriate for joinder.  Ankeny alleges prejudice from the "stacking" of the charges, but does not argue there was any lack of evidence for the charges individually.  Under the second type of prejudice, while the admission of the letters may well have been prejudicial to Ankeny, as all probative evidence is, we hold below that the letters were not admitted in error.  Ankeny

16

further fails to make a compelling showing of substantial prejudice related to the letters because there was other evidence that was clearly sufficient to support his conviction of both charges, if believed by the jury. Under the third type of prejudice, Ankeny, as in *Enright*, only generally alleges he may have wanted to testify at one trial but not another, and has not made a compelling showing of prejudice. Finally, as noted above, judicial economy was a significant factor given the unexpected mistrial and resulting need for an additional trial. We conclude the District Court did not abuse its discretion by joining the two cases for trial.

¶28 *2. Did the District Court err by admitting the letters Ankeny wrote to the victim from jail?*

¶29 Ankeny argues that the unredacted letters are inadmissible "bad act" evidence under Rule 404(b), and also inadmissible under Rule 403, as more prejudicial than probative.[6] As an initial note, the District Court's joinder of the trials, which we have herein affirmed, increased the scope of admissible evidence. Instead of considering only a single assault incident, the jury also considered a second assault incident, criminal endangerment, and unauthorized use of a motor vehicle, as well as Vonnie's delayed reporting of the first incident. Assessing these events led naturally to evidence about the nature of Vonnie and Ankeny's relationship.

### a. Rule 404(b)

¶30 The Rules of Evidence provide:

---

[6] The State argues Ankeny did not properly preserve his Rule 404(b) objection, but we conclude it was sufficiently preserved.

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

M. R. Evid. 404(b). This rule does not preclude the admission of evidence, but rather prohibits a particular "theory of admissibility," that is, using evidence to prove the defendant's subjective character "in order to show conduct in conformity with that character on a particular occasion." *State v. Blaz*, 2017 MT 164, ¶ 12, 388 Mont. 105, 398 P.3d 247 (citations omitted). The rule permits admission of other-acts evidence for "other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." M. R. Evid. 404(b). "This is a non-exclusive list of permissible purposes that are not precise; rather, the categories are amorphous, overlapping, and dependent upon the underlying facts." *Blaz*, ¶ 12.

¶31 Ankeny argues admission of the letters improperly permitted the jury to learn or infer that Ankeny was in jail, had previously served a prison term, was facing a parole violation, had potentially been in a fight, and was facing a drunken driving charge. However, Ankeny's description of the contents of the letters is far different than the wording of the letters themselves. Ankeny's references to his prior bad actions were minimal at best, vaguely stated, and closely interwoven in the long, detailed narrative with his promises to change and his pleas for Vonnie to not abandon their relationship, such as these passages:

> I know that I was going to get violated, just not like this. I pray that you will still stick by me.

18

.   .   .

I was on my way home when this mess I am in happened.  I left there because of the paperwork you left on the kitchen table, which only you can fix and I hope you do, it is a worse situation than this one by far.  Right now I have to take care of this, I am in panic mode because I don't want to lose my Buggy. I miss our puppy too . . . .

.   .   .

I am going to use this time to improve myself and focus on you and us, that will keep me going and not give up and the charges will get dropped, that are nonsense.  I did not know I was on the wrong side of the road when this happened.

.   .   .

I hope that you took care of the mess over there.  I don't need any more charges. And I couldn't get out of that without you helping for sure.

.   .   .

I fear another prison term . . . . My drinking is all over too, I can't be putting you through hell, it is not fair to do that to the person you love.

.   .   .

¶32     First, the State had permissible purposes to introduce the letters.  They contained Ankeny's apologies and near-admissions to the charges, his requests that Vonnie attempt to get charges dropped, and indications of his abusive, controlling relationship with her. They were relevant to explain why Vonnie had delayed reporting the April 2012 assault. These are all "other purposes" contemplated under Rule 404(b) for proper admission of evidence under the facts of this case.  *See Blaz*, ¶ 12.  Further, redaction would have been difficult and its efficacy doubtful, requiring the splicing of phrases from sentences that

19

would interrupt complete thoughts, and possibly rendering the letters unintelligible. The District Court's concern that redaction—or a onetime reading by a witness—may have made it difficult for the jury to fully comprehend the letters, was a valid one. We conclude the District Court did not abuse its discretion by admitting the letters.

### b. Rule 403

¶33 The Rules of Evidence provide:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

M. R. Evid. 403. "Evidence rises to the level of being unfairly prejudicial only 'if it arouses the jury's hostility or sympathy for one side without regard to its probative value, if it confuses or misleads the trier of fact, or if it unduly distracts from the main issues.'" *State v. Madplume*, 2017 MT 40, ¶ 33, 386 Mont. 368, 390 P.3d 142 (citations omitted). Even if evidence is potentially unfairly prejudicial, the Rule 403 balancing test favors admission because "the risk of unfair prejudice must substantially outweigh the evidence's probative value." *Madplume*, ¶ 33. Stated differently, unfair prejudice only occurs "when the evidence will prompt the jury to decide the case on an improper basis." *State v. Stewart*, 2012 MT 317, ¶ 68, 367 Mont. 503, 291 P.3d 1187 (citations omitted). Ankeny contends the unredacted letters unfairly aroused the jury's hostility for him as an experienced criminal, leading the jury to believe he committed these crimes because he had been convicted of past crimes.

20

¶34 The probative value of the letters was substantial, demonstrating consciousness of guilt by Ankeny, including apologizing for his actions, and tending to corroborate Vonnie's version of the incidents. The letters demonstrated a typical domestic violence cycle of abuse, and explained why Vonnie delayed reporting the April incident, the importance of which was demonstrated in its contribution to the initial mistrial. Even though most of the references to other acts were vague and nonspecific, the District Court gave a cautionary instruction about references in the letters to Ankeny's prior acts, pursuant to M. R. Evid. 105. We conclude the District Court did not abuse its discretion by concluding that the letters' probative value was not substantially outweighed by any prejudice to Ankeny.

¶35 3. *Did the District Court err by denying Ankeny's motion for a mistrial?*

¶36 A district court's decision to grant or deny a motion for mistrial must be based on whether the defendant has been denied a fair and impartial trial. *State v. Bollman*, 2012 MT 49, ¶ 33, 364 Mont. 265, 272 P.3d 650 (citations omitted). Generally, a mistrial is appropriate when there is a reasonable possibility that inadmissible evidence contributed to the conviction. *Bollman*, ¶ 33 (citations omitted). "In determining whether a prohibited statement contributed to a conviction, we consider the strength of the evidence against the defendant, the prejudicial effect of the testimony, and whether a cautionary instruction could cure any prejudice." *Bollman*, ¶ 33 (citations omitted). The trial judge is in the best position to gauge the effect that a challenged event will have on a jury. *Criswell*, ¶ 48 (citations omitted).

21

¶37 Ankeny offers a brief argument that Deputy Wofford's testimony that Vonnie knew Ankeny had been violent in the past was improper. Ankeny asserts Vonnie's "state of mind about what Ankeny might be capable of based on his prior violence toward others was highly inflammatory, prejudicial, and inadmissible prior bad acts evidence . . . ."

¶38 While not entirely clear, we assume Ankeny objects to this evidence on both Rule 404(b) and Rule 403 grounds, as a basis for mistrial. Upon Ankeny's objection, the District Court gave a cautionary instruction about the Deputy Wofford's single reference to Vonnie knowing that Ankeny had been violent towards other people. The instruction carefully explained the issue and properly admonished the jury, explaining that the reference was not an attempt to prove conformity to character, but to demonstrate Vonnie's state of mind that caused her to act as she did, both during and after the assault, a permissible purpose under Rule 404(b). Further, under Rule 403, Vonnie's state of mind, particularly her fear of Ankeny, was highly relevant to why she delayed reporting the April assault and had a reasonable apprehension of fear, an element of the charge. Ultimately, Ankeny's arguments do not establish that he was denied a fair and impartial trial due to the evidence. We conclude the District Court did not act arbitrarily or exceed the bounds of reason by denying the motion for a mistrial.

¶39 Affirmed.

/S/ JIM RICE

22

We concur:

/S/ MIKE McGRATH
/S/ DIRK M. SANDEFUR
/S/ BETH BAKER


Justice Ingrid Gustafson, dissenting.

¶40 I respectfully dissent on Issue One. Although the majority acknowledges that § 46-13-101(3), MCA, allows a district court to grant relief from waiver, and relief from waiver requires a showing of good cause, Opinion, ¶ 20, the District Court in fact overlooked the need to apply § 46-13-101(3), MCA, when it joined the first and second cases upon the State's motion. Because the District Court did not apply § 46-13-101(3), MCA, and did not find good cause to grant the State relief from its waiver of joinder in this matter, its decision to join the two cases lacks statutory support, and we should reverse and remand this matter for the District Court to make such a determination.

¶41 The facts and circumstances which occurred after the jury failed to return a verdict on June 3, 2014, illuminates why the District Court failed to apply § 46-13-101(3), MCA. Immediately after the court dismissed the jury in the first trial, the State's counsel moved to join the two cases, citing § 46-11-404, MCA, and § 46-13-210, MCA, in support of its position. As Ankeny explains:

> Having waived joinder and consolidation, the State was required to show good cause for relief from its waiver. § 46-13-101(3), MCA. The State's argument to the district court . . . did not mention good cause. . . . Therefore, the State has not, and cannot show that it met its burden to show good cause for relief from its waiver of joinder and consolidation in both cases.

23

Since it did not request joinder at the time of the omnibus hearing, the State waived its opportunity to avail itself of these provisions. In order to relieve the State from its waiver—and thus consider whether the cases should be joined under § 46-11-404, MCA, and § 46-13-210, MCA—the District Court first needed to find good cause under § 46-13-101(3), MCA.

¶42 As Ankeny argues in his Opening Brief, "Having abandoned joinder and consolidation in both 13-249 and 13-250, the State was required to show good cause for relief from its waivers. *See* § 46-13-101(3), MCA." However, as Ankeny further explains, the State did not show good cause, and the State did not raise § 46-13-101(3), MCA, when it moved to join the cases. Rather, the State argued the cases could have been joined initially—a position which Ankeny correctly characterizes as "beside the point." The State also did not raise § 46-13-101(3), MCA, at the June 5, 2014 hearing on consolidation. Nor did the District Court cite § 46-13-101(3), MCA, or refer to "good cause" in its Order Granting Motion to Consolidate for Trial. Thus, as Ankeny points out, "[t]he district court did not find good cause to grant the State relief from its pretrial waivers of joinder and consolidation." Rather, the District Court determined the cases "could have been joined in a single information pursuant to Mont. Code Ann. § 46-11-404," and "[c]onsolidation of the two cases for trial is in the interests of justice, as contemplated by Mont. Code Ann. § 46-13-210." Nothing in the record suggests the District Court was aware of the need to find good cause to relieve the State of its waiver under § 46-13-101(3), MCA. Although the majority contends that Ankeny's argument fails because he did not raise § 46-13-101(3),

24

MCA, in the court below, the State had the burden of proof. Ankeny had no obligation to make the State's case for it.

¶43 Although the State argues these two cases could have been joined in the first place, this is not the point: the mere fact the cases could have been joined at the outset does not provide good cause for relief from the waiver of joinder. Here, the majority improperly relies on *Southern* and similar cases, putting the burden on Ankeny to prove prejudice when the burden should be on the State to prove good cause. In *Southern*, we held when a defendant seeks severance, it is his burden to prove severance is necessary to prevent unfair prejudice. *Southern*, ¶ 14 (citation omitted). We have held a criminal defendant moving for severance bears the burden of proving joinder is prejudicial. *State v. Martin*, 279 Mont. 185, 192, 926 P.2d 1380, 1384 (1996) (citation omitted). However, where the State is moving for relief of its waiver of joinder, and the defendant is not moving to sever causes, it is not the defendant's burden to prove prejudice under the factors recited in *Southern*. Here, unlike *Southern* and *Martin*, Ankeny has not moved for severance; the State has moved for relief from its waiver of joinder. Therefore, the burden is on the State to prove good cause—and we cannot presume good cause exists where the State did not present the argument in the court below.

¶44 Since the District Court did not apply § 46-13-101(3), MCA, in relieving the State of its waiver, this is an error of law, which we review de novo. *State v. Davis*, 2016 MT 102, ¶ 30, 383 Mont. 281, 371 P.3d 979 ("[A]ll issues involving interpretation and

application of the law are decided by the appellate court on the basis of the law, without according deference to the trial court.") (citation omitted).

¶45 I would reverse the District Court since it erred in joining these cases for trial, after the State had waived the opportunity to do so, without applying the good cause standard of § 46-13-101(3), MCA.

¶46 I also dissent on Issue Two. I would hold the District Court abused its discretion by admitting the letters Ankeny wrote to Vonnie from jail, as the prejudicial contents of the letters outweighed their probative value pursuant to M. R. Evid. 403.

¶47 Unfair prejudice may arise from evidence that arouses the jury's hostility or sympathy for one side, confuses or misleads the trier of fact, or unduly distracts the jury from the main issues. *State v. Franks*, 2014 MT 273, ¶ 16, 376 Mont. 431, 335 P.3d 725 (citation omitted). Here, the letters did all three, portraying Ankeny as a person with a criminal past, present, and future―someone who had served time in prison, was currently on parole, was facing charges unrelated to this case, and was expecting to return to prison for parole violations.

¶48 The State told the District Court it intended to offer the letters both as substantial proofs of admission and to prove Ankeny attempted to influence Vonnie's behavior, "which does feed into the domestic violence cycle." The State suggested Ankeny's expressions of controlling behavior and of love for Vonnie would help the jury understand Vonnie's delayed disclosure.

¶49 Ankeny argues he "made numerous proposals to allow the State to introduce the probative evidence it wanted, and for its stated purpose, without introducing the unredacted letters . . . ." Ankeny's proposals included: redacting the letters; Vonnie reading the relevant portions of the letters into the record; Ankeny stipulating the car was recovered in his possession in Missoula; and the parties removing a dated label from one piece of evidence, which is how the jurors deduced Vonnie's delay in disclosing the April 2012 assault. However, the State objected to every proposal. Instead, the State desired, and the District Court agreed, to have the letters admitted into evidence and submitted to the jury unredacted.

¶50 The State submitted five letters into evidence, each between two and four pages in length. The letters make it clear that: Ankeny is writing from jail; he has several additional charges pending against him, including DUI and criminal endangerment; he was previously in prison for another crime or crimes; he was on parole prior to being arrested; he knowingly violated the terms of his parole; and he expects to be sent back to prison for his parole violation. While the majority characterizes Ankeny's references to prior bad actions as "minimal" and "vaguely stated," they are specific enough to inform the jury he has a criminal history: "[L]ast time I got convicted for doing nothing!" "As for my violation, there is no DUI so I could be let right back out when I am done with this." "My public defender just got me down & really scared because he is not a very good one and if I keep him, I fear another prison term."

27

¶51     The details of Ankeny's encounters with the criminal justice system are intermixed with professions of love and longing and vague apologies to Vonnie, such as "I am sorry for all the wrong I have done," "I take the blame for all our problems," and "Will you forgive me honey and move forward with me?" The letters also contain statements the jury could interpret as supporting Vonnie's testimony, such as: "I can[']t be getting all drunk and putting you thru hell, it is not fair to do that to the person you love. They always say we hurt the ones closest to us the worse." And, "I am trying to make things better with us and assure you that once we make it past this, it will never happen again." Ankeny argued these statements could just as easily refer to the trouble he was in for the parole violation and other pending charges. This is true. However, it was within the District Court's discretion to admit these statements and let the jury decide how to interpret them. I disagree it was within the court's discretion to admit the full text of five letters in order to put these few sentences before the jury.

¶52     The letters also contain statements which can be read as Ankeny encouraging Vonnie to assist him in evading the charges from the April 25 and May 2 incidents—statements such as: "I hope that you took care of the mess over there. I don't need anymore charges and I couldn't get out of that without . . . you helping for sure," and, "I am praying that you took care of the thing over there. I have no charges so that's a good sign." I agree these statements were probative as well, but maintain their admission did not require the admission of the letters in their entirety.

28

¶53 The letters also contain admissions Ankeny was driving Vonnie's car, such as, "I am sorry about the break [sic] line in the car but I assure you I didn't do that. I stopped the car and it was fine." However, Ankeny offered to stipulate Vonnie's car was recovered in Missoula County with Ankeny driving it, and thus the State did not need to introduce the letters to prove Ankeny had control of the vehicle.

¶54 The majority holds the letters were relevant to explain why Vonnie delayed disclosing the April 2012 assault. However, as both parties acknowledge, the first jury only discovered Vonnie had delayed disclosing the April 2012 assault because of the date on an evidence sticker. Given the State's desire to keep the delay from the jury in the first trial, it is unclear why removal of that sticker was not the preferable solution for the second trial.

¶55 Although some statements in the letters have some probative value, the prejudicial nature of the remaining content cannot be denied, and this prejudicial content should not have been presented to the jury. Either redacting the letters or having a witness read the probative excerpts to the jury would have satisfied the State's need to present this evidence while also protecting Ankeny's right not to have the jury decide the case on an improper basis. *See Stewart*, ¶ 68.

¶56 Although the District Court offered a cautionary instruction to the jury, it was insufficient to overcome the prejudicial effect of the unredacted letters. Furthermore, I would not find the admission of these letters was harmless error. Section 46-20-701, MCA; *State v. Van Kirk*, 2001 MT 184, ¶ 44, 306 Mont. 215, 32 P.3d 735 (to prove trial error was

harmless, the State must demonstrate no reasonable possibility the inadmissible evidence might have contributed to conviction).

¶57 For these reasons, I would conclude the District Court erred in admitting Ankeny's letters and providing them unredacted to the jury. I would therefore reverse and remand this matter to the District Court.

/S/ INGRID GUSTAFSON

Justice Shea and Justice McKinnon join in the dissenting Opinion of Justice Gustafson.

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON