Justice Laurie McKinnon delivered the Opinion of the Court.
***34 ¶1 Christopher James Michelotti appeals from a judgment of the Thirteenth Judicial District Court, Yellowstone County, entered after a jury convicted him of aggravated burglary and four counts of assault with a weapon. We affirm and address the following issues:
1. Whether the District Court abused its discretion by admitting evidence that Michelotti is affiliated with a gang.
2. Whether the District Court erred by denying Michelotti's motion for mistrial.
3. Whether sufficient evidence supported the jury's determination that Michelotti assaulted Garrick Gonzales with a weapon.
FACTUAL AND PROCEDURAL BACKGROUND
¶2 In the early evening of May 11, 2014, Valerio Resendiz (Valerio), Valerio's friend, Garrick Gonzales (Gonzales), and Valerio's girlfriend, Sabre Dillon (Dillon), drove to Daniel Lira's (Lira) house in Billings, Montana. Dillon remained in the vehicle while Valerio and Gonzales stepped inside. Inside Lira's house, Valerio and Gonzales saw Lira and met Michelotti for the first time. During their encounter, Michelotti held a black semiautomatic handgun and Valerio saw drugs and other guns inside Lira's house. As a result, Valerio felt "uncomfortable." Michelotti told Valerio that he was in a gang, the Sureños, and Valerio told Michelotti that he used to be a Sureño. This prompted Michelotti to ask Valerio why his head was not shaven and suggested Valerio "put in work" with Michelotti, which Valerio understood to *1023 mean Michelotti wanted his help committing crimes. Valerio explained to Michelotti that he and his girlfriend recently had a child and that he no longer commits crimes. Valerio believed Michelotti was high on methamphetamine based on Michelotti's behavior and Valerio's ***35 experience being around other users. Valerio and Gonzales stayed at Lira's house for about five minutes.
¶3 After leaving, Valerio, Gonzales, and Dillon went to Valerio's parents' house, where Valerio, Dillon, and their five-month-old child lived and where Gonzales was a frequent overnight guest. Valerio's parents, Carla Resendiz (Carla) and Adan Resendiz (Adan), were at home with Valerio and Dillon's child. Valerio told his parents about their interaction at Lira's house and about meeting a man who made him uncomfortable because he held a gun. Between nine and ten o'clock that evening, Carla and Adan went downstairs to their basement bedroom for the night. Valerio, Gonzales, and Dillon remained in the upstairs living room watching television while Valerio and Dillon's child slept in her portable crib in the adjoining dining room.
¶4 At approximately eleven o'clock that evening, Michelotti knocked on Valerio's parents' front door. Valerio looked at his home security system's monitor, which conveyed real-time video from six exterior cameras. Valerio installed the camera system several years earlier in response to thefts and damages of vehicles on the premises. Valerio did not recognize that it was Michelotti at the front door because of the camera system's poor image quality. Valerio opened the door and Michelotti stepped inside uninvited. Michelotti again urged Valerio to "put in work," or go commit crimes, with him. Valerio told Michelotti that he had a family and that he would not commit crimes with him. Michelotti became "upset," pulled the handgun that Valerio saw him holding earlier, and pointed it at Valerio. Dillon, who was holding her recently awoken child, told Michelotti to leave and Michelotti then pointed the gun at Dillon and her child. Dillon surreptitiously picked up a cordless phone and went downstairs to the basement. In the basement, Dillon woke Carla and Adan up and initiated a 9-1-1 call, which lasted over fifteen minutes.
¶5 Upstairs, Valerio agreed to go with Michelotti and they, along with Gonzales, stepped outside onto the porch. Valerio quickly returned inside, telling Michelotti he was going to get some shoes and clothes to wear. Valerio left the front door unlocked because Gonzales was still outside. Instead of getting shoes and clothes, Valerio went to his basement bedroom and retrieved a twelve-gauge shotgun from under his bed. Valerio attempted to go back upstairs with the shotgun, but Adan stopped him and took the shotgun from Valerio's hands. Carla, speaking on the phone with a 9-1-1 dispatcher, handed the phone to Valerio, who was both more calm and better informed, so that Valerio could provide the dispatcher additional information about what ***36 was happening. At some point, Gonzales, Michelotti, and Lira, who apparently arrived with Michelotti, entered the house. Gonzales joined the others downstairs in the basement, while Michelotti stood at the top of the stairs. Adan warned Michelotti that he held a gun and not to come downstairs. Michelotti moved toward the stairs and Adan shot him in one of his knees with the shotgun. In response, Michelotti shot three rounds from his gun down the stairwell, injuring no one.
¶6 Shortly thereafter, police officers positioned outside the front of the house arrested Lira and Michelotti, who crawled out of the house because of his injured knee. At around the same time, police officers positioned outside the back of the house helped everyone else (Valerio, Gonzales, Dillon, Adan, Carla, and Valerio and Dillon's child) out of a basement window after Gonzales kicked the window's glass out. Upon searching Michelotti, officers removed a Bic-type shaving razor from his pocket. Michelotti received medical treatment for his injured knee.
¶7 The State charged Michelotti with one count of aggravated burglary or, alternatively, assault with a weapon against Valerio, and four additional counts of assault with a weapon against Gonzales, Dillon, Adan, and Carla. The District Court held a jury trial. At trial, Michelotti renewed his pre-trial objection to the admission of gang-affiliation evidence, arguing *1024 it would unfairly prejudice the jury. Michelotti also moved for a mistrial after one of the State's witnesses testified that Michelotti had an outstanding arrest warrant when he committed the offenses. The jury convicted Michelotti of aggravated burglary and four counts of assault with a weapon. The District Court imposed a sentence of forty years for aggravated burglary and four twenty-year sentences for each assault with a weapon, to run concurrent with each other, but consecutive to the aggravated burglary sentence. Michelotti appeals.
STANDARDS OF REVIEW
¶8 A mistrial is appropriate when a reasonable possibility exists that inadmissible evidence contributed to the conviction. State v. Long , 2005 MT 130, ¶ 24, 327 Mont. 238, 113 P.3d 290. We review a court's determination after considering a motion for mistrial for an abuse of discretion. Long , ¶ 13. We afford trial courts broad discretion in determining the relevance and admissibility of evidence and generally review a trial court's determination for an abuse of discretion. State v. Derbyshire , 2009 MT 27, ¶ 19, 349 Mont. 114, 201 P.3d 811. A court abuses its discretion if it acts arbitrarily, without employing conscientious judgment, or exceeds the bounds of reason, resulting in substantial injustice. Derbyshire , ¶ 19. In exercising its discretion, ***37 trial courts are bound by the rules of evidence and statutes and, to the extent a court's determination is based on an interpretation of an evidentiary rule or statute, our review is de novo. Derbyshire , ¶ 19.
¶9 We review a challenge to the sufficiency of evidence to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Clark , 2008 MT 419, ¶ 14, 347 Mont. 354, 198 P.3d 809.
DISCUSSION
¶10 1. Whether the District Court abused its discretion by admitting evidence that Michelotti is affiliated with a gang.
¶11 Michelotti argues the District Court abused its discretion by admitting evidence that he was affiliated with the Sureños gang. Michelotti argues this evidence was substantially more prejudicial than probative and that the State only introduced it "to plant a seed of fear with the jury."
¶12 Prior to trial, Michelotti moved the District Court to prohibit the State from introducing evidence of Michelotti's "other crimes, prior bad acts or other wrongs," including "any illegal associations." (Emphasis omitted.) In response, the State argued evidence of Michelotti's Sureños gang affiliation was admissible under the Transaction Rule, because Michelotti "committed the crimes based in part on his attempt to force [Valerio] to participate in gang activities with him." Further, the State anticipated introducing gang-affiliation evidence to provide the jury context and show "that [Michelotti] questioned [Valerio] about gang affiliation, described his own membership as Surenos, and demanded that [Valerio] participate in gang activity at gunpoint." The State argued that it was "entitled to present the actual circumstances of the crime." The District Court granted Michelotti's motion in part, prohibiting the State from introducing "prior bad acts that occurred prior to the day at issue, and including other crimes or that he is on probation, or his criminal history ... [and any] particular bad acts as a gang person." The District Court denied Michelotti's motion in part, concluding the evidence was admissible pursuant to the Transaction Rule because "it adds context for [Michelotti] being at the residence with a weapon and the basis for fear or apprehension of the individuals inside."
¶13 The Transaction Rule is a statutory rule of evidence. It provides, "Where the declaration, act, or omission forms part of a transaction which is itself the fact in dispute or evidence of that fact, such declaration, act, or omission is evidence as part of the transaction."
***38 Section 26-1-103, MCA. "Admissibility under the transaction rule is 'predicated on the jury's right to hear what transgressed immediately prior and subsequent to the commission of the offense charged, so that they may evaluate the evidence *1025 in the context in which the criminal act occurred.' " State v. Detonancour , 2001 MT 213, ¶ 29, 306 Mont. 389, 34 P.3d 487 (quoting State v. Wing , 264 Mont. 215, 225, 870 P.2d 1368, 1374 (1994) ). Further, the Transaction Rule allows transaction evidence when acts are inextricably linked to and explanatory of the present charges. State v. Sayler , 2016 MT 226, ¶¶ 14-15, 384 Mont. 497, 380 P.3d 743. On appeal, Michelotti does not dispute the propriety of allowing gang-affiliation evidence under the Transaction Rule, but specifically argues that it was inadmissible under M. R. Evid. 403, because it was substantially more prejudicial than probative. M. R. Evid. 403 allows a court to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." "Whether the probative value is outweighed by the prejudicial effect is within the trial court's discretion" and we therefore review its determination for an abuse of that discretion. Detonancour , ¶ 31 ; accord Derbyshire , ¶ 19.
¶14 Evidence the State offers in a criminal case is generally prejudicial to the defendant. M. R. Evid. 403 allows the trial court to exclude relevant evidence where "its probative value is substantially outweighed by the danger of unfair prejudice." (Emphasis added.) Here, evidence of Michelotti's gang affiliation was central to the jury's understanding of what transpired and therefore highly probative. Michelotti met Valerio hours before the alleged assaults and the two discussed their gang affiliations. Michelotti said that he was in the Sureños and Valerio said he used to be in the Sureños too. Michelotti asked Valerio why, if he was a Sureño, his head was not shaven. He suggested Valerio "put in work" with him, which Valerio understood to mean that Michelotti wanted Valerio's help committing crimes because of Valerio's former gang affiliation. Later, Michelotti came to Valerio's parents' house, where Valerio lived, to renew his earlier urging that Valerio help him commit crimes. Michelotti brought a shaving razor with him for this encounter. This evidence helped explain, and was thus probative of, Michelotti's conduct during his two encounters with Valerio and assisted the jury in its understanding of Michelotti's relationship with Valerio. This evidence was also probative of why, within hours of meeting Valerio, Michelotti went with a gun to where Valerio lived; entered Valerio's home uninvited; thought Valerio should shave his head and brought a shaving razor; and thought Valerio was obligated to engage in criminal activity with him. Michelotti's Sureños ***39 affiliation, and Valerio's former affiliation, provided the jury context for why Michelotti believed Valerio was obligated to help him commit crimes and why he pointed a gun at Valerio.
¶15 Further, an element of assault with a weapon pursuant to § 45-5-213(1)(b), MCA, required the jury to find that Michelotti caused Valerio, and the others, to experience a "reasonable apprehension of serious bodily injury." Michelotti's Sureños affiliation, and Valerio's former affiliation, assisted the jury in understanding why a reasonable person would fear Michelotti in those circumstances. As a former member, Valerio knew what being a Sureño entailed, including its members' proclivity for engaging in criminal activity. The District Court allowed the State to introduce evidence that Michelotti was affiliated with the Sureños, but limited the evidence to Michelotti's actions on "the day at issue." The District Court thereby limited the prejudicial nature of the information by prohibiting the State from introducing any evidence of particular bad acts Michelotti may have committed as a "gang person" prior to the incident Michelotti was on trial for.
¶16 Evidence concerning Michelotti's Sureños affiliation was inextricably linked to and explanatory of the State's charges against him and it was within the District Court's discretion to decide whether the danger of unfair prejudice substantially outweighed its probative value. See Sayler , ¶¶ 14-15. Our review of the record demonstrates the evidence was highly probative and therefore the District Court was obligated to exclude it only if, in its discretion, it concluded the danger of unfair prejudice substantially outweighed its high probative value. We conclude the danger of unfair prejudice did not substantially outweigh its high probative value and that the District Court did not abuse its discretion by admitting evidence that Michelotti was affiliated with a gang.
*1026 ¶17 2. Whether the District Court erred by denying Michelotti's motion for mistrial.
¶18 Michelotti argues the District Court erred by denying his motion for mistrial after a witness testified that there was an "active warrant" for Michelotti's arrest at the time of the assaults.
¶19 At trial, Sergeant Shane Winden of the Billings Police Department testified that while Michelotti received medical treatment for his knee injury, he used Michelotti's identification to learn there was an outstanding or "active" warrant for Michelotti's arrest. Michelotti immediately objected, claiming that Sergeant Winden's testimony inappropriately introduced evidence of prior bad acts. The State's exchange with Sergeant Winden and Michelotti's objection were as ***40 follows:
[The State] Q. What was done with the Defendant then after you saw him come in for treatment?
[Sergeant Winden] A. He was-I mean, he was rushed into surgery pretty quickly after that. It was at that point that we were able to positively identify him through identification that he had on him, it was actually given to me by a paramedic. And in running and checking him he had a-an active warrant-
[Michelotti's Counsel]: Objection, Your Honor. Rule 403, 404 violation. Prior bad act-
The District Court conducted a short recess to discuss Michelotti's objection outside the presence of the jury and Michelotti moved for a mistrial. The District Court denied Michelotti's motion and concluded that, although being "somewhat prejudicial and indicat[ing] some prior interest by law enforcement," mentioning an active arrest warrant does not rise to the prejudicial level of mentioning a prior conviction, prior incarceration, or the defendant being on probation. The District Court sustained Michelotti's objection, prohibited the State from any further discussion of Michelotti's outstanding warrant, and gave the jury a curative instruction, which admonished it to "disregard the officer's last testimony as not having anything to do with this matter at all." The District Court, at the conclusion of the case, again instructed the jury not to convict Michelotti of the offenses charged based on any of his prior acts.
¶20 The District Court's pre-trial order specifically prohibited the State from introducing evidence of Michelotti's "prior bad acts that occurred prior to the day at issue, and including other crimes or that he is on probation, or his criminal history." However, even without the District Court's pre-trial prohibition, evidence that a defendant committed other crimes is generally not admissible. Derbyshire , ¶ 21. "One of the dangers in admitting such evidence is that the jury will prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge." Derbyshire , ¶ 22 (internal quotations and citations omitted).
¶21 We recognize that a cautionary instruction may cure the prejudicial effect of otherwise inadmissible evidence. In State v. Long , the court tried defendant for distribution of dangerous drugs and the State's witness said, unprompted, that Long "doesn't sell [methamphetamine] to children." Long , ¶¶ 1, 6, 17. Long objected and moved for a mistrial. Long , ¶¶ 17-18. The court recessed and the parties discussed the occurrence outside the presence of the jury. Long , ¶¶ 18-19. The court sustained Long's objection, but denied her motion ***41 for mistrial, and admonished the jury to disregard the witness's last statement. Long , ¶¶ 19, 26. On appeal, we held, "[a]ny prejudicial effect the statement may have had was promptly cured by the court's cautionary instructions to the jury." Long , ¶ 27.
¶22 Michelotti relies on State v. Derbyshire to argue the District Court's curative instruction "was insufficient to remedy the prejudice" Sergeant Winden caused by telling the jury there was an outstanding warrant for Michelotti's arrest on the day of the alleged assaults. In that case, probation officers searched probationer Derbyshire's home and found over a pound of marijuana. Derbyshire , ¶ 2. Derbyshire objected to the State introducing evidence that he was on probation when officers searched his home and that the officers who searched his home were probation *1027 officers. Derbyshire , ¶ 4. Relying on the Transaction Rule, the district court ruled that the officers could identify themselves as "probation officers" because their identities were "part of a transaction." Derbyshire , ¶ 5. At trial, the State's witnesses said the word "probation" forty-four times. Derbyshire , ¶ 15. We reversed Derbyshire's conviction after contrasting the State's "apparently deliberate" use of the word "probation" forty-four times with our analysis of what occurred in Long , where we concluded "a single, unsolicited statement by a witness to which there was a contemporaneous objection followed by a curative instruction" was harmless. Derbyshire , ¶¶ 52, 56 (citing Long , ¶¶ 16-27 ).
¶23 Here, we find the circumstances and analysis more similar to Long than Derbyshire . Sergeant Winden, unprompted, stated once that there was an "active warrant" for Michelotti's arrest. As in Long , there was a contemporaneous objection, the District Court entered a recess, and then gave a curative instruction admonishing the jury to disregard the witness's prior statement. Further, the District Court instructed the jury a second time that they were not to convict Michelotti based on any of his prior acts. "[T]he jury cannot be presumed to ignore their duties to respect the instructions of the court" and "the general rule is that where the trial judge withdraws or strikes improper testimony from the record, with an accompanying cautionary instruction to the jury, any error committed by its introduction is presumed cured." Long , ¶ 25.
¶24 Moreover, we agree with the District Court's conclusion that Sergeant Winden's mentioning an outstanding warrant was less prejudicial than an instance where a witness mentions a defendant's prior conviction, prior incarceration, or status as a probationer because an arrest warrant is not indicative of a criminal conviction. "In ***42 determining whether a prohibited statement contributed to a conviction, we consider the strength of the evidence against the defendant, the prejudicial effect of the testimony, and whether a cautionary jury instruction could cure any prejudice." State v. Weldele , 2003 MT 117, ¶ 75, 315 Mont. 452, 69 P.3d 1162. Here, considering the strong evidence against Michelotti, the extent of the "somewhat prejudicial" statement, and the quickly-given, appropriate, and presumptively respected curative instruction, we conclude there was no reasonable possibility that the inadmissible evidence contributed to Michelotti's conviction. See Long , ¶ 25 ; Weldele , ¶ 75. Therefore, the District Court did not err in denying Michelotti's motion for mistrial.
¶25 3. Whether sufficient evidence supported the jury's determination that Michelotti assaulted Garrick Gonzales with a weapon.
¶26 Michelotti argues the evidence presented at trial was insufficient to support the jury's determination that Michelotti assaulted Gonzales because Gonzales did not testify and those who did testify could only guess that Gonzales was reasonably apprehensive of serious bodily injury.
¶27 "A person commits the offense of assault with a weapon if the person purposely or knowingly causes ... reasonable apprehension of serious bodily injury in another by use of a weapon or what reasonably appears to be a weapon." Section 45-5-213(1), MCA. "[D]irect evidence is not necessary to establish the elements of a criminal offense. A criminal conviction may be based entirely on circumstantial evidence." State v. Vukasin , 2003 MT 230, ¶ 20, 317 Mont. 204, 75 P.3d 1284. Further, a person's reasonable apprehension of serious bodily injury is an objective standard; i.e., whether a reasonable person would feel apprehensive when faced with the conduct complained of. Vukasin , ¶ 19 (citations omitted).
¶28 Here, although Gonzales did not testify on his own behalf, the State presented evidence to the jury that Gonzales was with Valerio when they went to Lira's house and met Michelotti. Michelotti held a black semiautomatic handgun, discussed his gang affiliation, described engaging in future criminal activity, and acted like he was high on methamphetamine. Later that same night, Gonzales was inside Valerio's parents' home, where Gonzales was a frequent overnight guest, when Michelotti knocked and entered *1028 uninvited. Gonzales was in the room when Michelotti pointed the gun at both Valerio and Dillon. Gonzales first exited the house with Valerio and Michelotti and then returned to join the others downstairs. Valerio was fearful for those downstairs, including Gonzales, and Adan shot Michelotti in the knee when Michelotti proceeded toward the stairwell after Adan told ***43 him to remain upstairs. Gonzales was downstairs when Michelotti fired several rounds down the stairwell and towards Gonzales's location. Gonzales exited the home with the others after he kicked out the window to facilitate their exit. Valerio testified at trial that during the night in question he was "scared" that his "family was going to get hurt" and scared "for [his] life." When the State asked Valerio if Gonzales was scared like he was scared, Valerio responded affirmatively, "Yeah."
¶29 We conclude, based on the evidence the State presented at trial, that a reasonable person in Gonzales's circumstances would feel apprehensive and that a rational trier of fact could have found the essential elements of assault with a weapon based on Gonzales's experience beyond a reasonable doubt. See Clark , ¶ 14 ; Vukasin , ¶ 19.
CONCLUSION
¶30 Based on the foregoing, we conclude the District Court did not abuse its discretion by admitting evidence Michelotti was affiliated with a gang; did not err by denying Michelotti's motion for mistrial; and that sufficient evidence supported the jury's determination Michelotti assaulted Gonzales with a weapon. Affirmed.
We Concur:
MIKE McGRATH, C.J.
BETH BAKER, J.
JAMES JEREMIAH SHEA, J.
DIRK M. SANDEFUR, J.