FILED

12/21/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0159

DA 20-0159

## IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 320

STATE OF MONTANA,

      Plaintiff and Appellee,

   v.

TYLER FREDERICK ERICKSON,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DC 18-232
Honorable James A. Manley, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Appellate Defender, Michael Marchesini, Assistant Appellate
Defender, Helena, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Roy Brown, Assistant
Attorney General, Helena, Montana

          Steven N. Eschenbacher, Lake County Attorney, Benjamin Anciaux,
Deputy County Attorney, Polson, Montana

Submitted on Briefs:  November 17, 2021

Decided:  December 21, 2021

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Tyler Frederick Erickson (Erickson) appeals his conviction in the Twentieth Judicial District Court, Lake County, for Assault on a Peace Officer, a felony, under § 45-5-210, MCA.  He appeals the District Court's denial of his motion for mistrial, based on two alleged incidents of prosecutorial misconduct.

¶2     We affirm, and address the following issue:

*Did the District Court err by denying Erickson's motion for mistrial based upon the prosecutor's "felony probation" comment during opening statement, and a remark about Erickson's prior prison incarceration by a prosecution witness?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     Erickson was convicted in 2015 of Criminal Possession of Dangerous Drugs under § 45-91-102, MCA, and was sentenced to a five-year commitment to the Department of Corrections.  Following his release, he met with probation officer Devon McCrea (McCrea), for monthly check-ins.  On June 28, 2018, Erickson reported to the probation office for his monthly appointment, but the visit ended with Erickson pulling a knife on McCrea and other officers.  As a result, the State charged him with one count of Assault on a Peace Officer, a felony.

¶4     Erickson filed a motion in limine to exclude evidence of prior crimes.  In response, the State requested leave to introduce evidence that Erickson was on probation at the time of the offense, arguing this information was a necessary component of the allegation that he assaulted his probation officer.  The prosecutor explained to the District Court:

From the standpoint of what the State would want to present at trial, it would simply be that [Erickson] is on probation . . . .  The State has no interest in letting the jury know what he is on probation for . . . .  But we would like to

2

be able to mention that he is reporting as a regular probationer to the probation office and that the people he reported to are the people that are the victims in this matter.

The District Court agreed with the prosecutor's reasoning and ruled the State could introduce evidence that Erickson was on probation, reported to the probation office, and allegedly assaulted a probation officer there.

¶5 Shortly after the prosecutor began his opening statement, he told the jury: "[McCrea] is Mr. Erickson's supervising officer so she sees him on a regular basis. He's on probation. And that would be *felony probation* because you don't have misdemeanor probation." (Emphasis added.) Erickson's counsel objected to the statement as a reference to Erickson's prior bad acts and, in an off-the-record discussion, moved for a mistrial, which the District Court denied.

¶6 McCrea testified she had been Erickson's probation officer "since his release," and that, on the day of the incident, he "didn't seem himself" and "seemed a little stressed." Based on her experience, McCrea suspected recent drug use. McCrea asked Erickson if he had used drugs recently, to which he admitted using methamphetamine that morning, in violation of his probation conditions. McCrea explained to Erickson the consequences of violating this condition included increased weekly reporting to the probation office, increased urine analysis testing, and the possibility of referring him to Western Montana Addiction Services for an updated chemical dependency evaluation.

¶7 McCrea related that Erickson "wasn't receptive" to these changes, informing her he would not comply with weekly reporting and commenting that "if he has to attend any out-patient or self-help that he was going to harm the counselors." He also threatened to

3

hurt the police if McCrea called them. McCrea stepped out of her office to call detention officers, leaving Erickson under the supervision of fellow probation officer, Raymond Czak (Czak). She explained this was an attempt to conceal the call from Erickson. McCrea returned to her office and informed Erickson that she needed to place him in handcuffs for safety. Erickson backed away from the probation officers and "pulled a knife out of his pocket, exposed the blade and was holding it toward [McCrea and Czak]." McCrea testified that when she saw the knife, "I thought I was going to be stabbed. I thought I was going to be hurt." McCrea indicated that Erickson, while holding the knife, told her "he wasn't going back and asking me not to do this," and that she reached for her weapon because she "felt like [Erickson] was a threat." When she realized her gun was locked under her desk, she started "negotiating" with Erickson, saying "drop the knife" approximately a dozen times.

¶8    Erickson backed toward the window and further away from the officers. At one point he put the knife away and tried to move the desk between himself and the officers, which appeared to McCrea like he was attempting to create a barricade. McCrea said that Erickson also "slam[ed] and thrash[ed] his back into the glass window," which McCrea interpreted as "him trying to break it for his escape route." When local police officers arrived, Erickson pulled out the knife a second time and exposed the blade. McCrea testified that Erickson "threw [the knife]," although not directly at the officers, "and the blade stuck into the drywall" momentarily before falling to the floor. When police officers entered the room, Erickson asked that McCrea be the one to place him in handcuffs, which she did.

4

¶9    Following McCrea's testimony regarding the incident, the prosecutor asked McCrea about her knowledge of other threats made by Erickson, and the following exchange occurred:

Prosecutor: Had he made threats against other people?

McCrea: That day?

Prosecutor: Yes.

McCrea: Not that I am aware of . . . .

Prosecutor: But [Erickson] said he was in ITU at one point to you?

McCrea: Intensive Treatment Unit.

Prosecutor: Okay. And that would be an upgrade from what he was doing?

McCrea: That is at the Montana State Prison.

Defense counsel objected and a discussion with the court was held off the record, after which the prosecutor continued his questioning:

Prosecutor: Isn't it true that he had threatened the people [at ITU], said that he would harm them?

McCrea: He made a comment, something about he barely made it through the program because of harming the counselors.

Prosecutor: And did he say, while you were in your office on the 28th of June, that he would harm police if they came?

McCrea: Yes.

Prosecutor: So contrary to what you just testified to that he made no threats against other people, he had, in fact, that day made threats against other people?

McCrea: Yes, towards other law enforcement.

¶10    Czak testified consistently with McCrea's testimony about the incident, although he indicated Erickson had "lunged" with the knife at Czak and McCrea, while McCrea testified that "he was going to lunge towards us but hesitated and did not."

¶11    At the close of the prosecution's case-in-chief, defense counsel renewed a motion for mistrial, based on the prosecutor's reference to Erickson being on "felony probation" in his opening statement and the questioning that led to McCrea revealing Erickson had been incarcerated at the Montana State Prison. Defense counsel argued the prosecutor's actions were unfairly prejudicial and violated the District Court's ruling on the motion in limine excluding evidence of prior crimes:

> We agreed that [p]robation would come up . . . but we also agreed that any underlying offenses . . . that [Erickson] has committed in his past would not be brought up. That's why I filed the motion in limine. I was under the impression that the State agreed to it. Obviously not.

¶12    The prosecutor responded that McCrea's reference to Erickson's time in prison was unintentional because he had instructed McCrea prior to trial not to talk about anything beyond her report and its reference to Erickson telling her he had almost harmed counselors at the ITU. He elaborated, "As far as the context within which that comment was made, the defendant himself, according to Officer McCrea's testimony, said, 'I almost hurt those people the last time.' The jury needs to know what the situation there is." As for the comment about felony probation, the prosecution argued the State had not technically violated the motion in limine because he did not specifically reveal what Erickson was on probation for, or whether it was a violent or non-violent offense. He suggested the statements could be cured by a cautionary instruction.

6

¶13 The District Court stated, "I wish [the prosecutor] hadn't said that in opening statement about felony probation . . . . I can understand why [defense counsel] would think this is a tactic by the prosecutor to prejudice." However, the District Court denied the request for mistrial, reasoning:

> [T]his incident happened in the Probation & Parole's office. It's inescapable that [the jury is] going to know that he's on Probation & Parole. And they've got to be able to say everything that happened and also that the officers have to be able to say whether they were afraid and why . . . . [The jury were] already going to inevitably know that he's on probation, that he's using methamphetamine and that he's carrying a knife. So in this situation I don't think it as prejudicial . . . I agree with the State that it's curable by a cautionary instruction. If you want to offer one, I will likely give one.

¶14 Following denial of the motion, Erickson testified and largely corroborated the officers' testimony, admitting to exposing the knife twice to officers, but denied lunging with the knife, saying "I didn't have a problem with either [McCrea or Czak] . . . . I've respected [McCrea]. She's always been nice and fair to me." Erickson explained he used the knife because he "just really wanted to die. I didn't want to go back to jail." He pulled the knife out a second time when the police arrived because he thought displaying the knife would prompt the officers to shoot him according to what he assumed was their "policy," offering, "I had no intention of threatening or scaring anybody." He did not recall telling McCrea he had threatened other counselors in the past or that he would hurt police officers.

¶15 Before the parties made their closing arguments, the District Court gave the following cautionary instruction, provided by the defense:

> The State has presented evidence that the defendant was on probation at the time of the incident and this evidence has been submitted for the sole purpose of explaining facts surrounding the incident. The jury is prohibited from using this information to assume that somehow the defendant is more likely

7

to be guilty of this offense because he was on probation. He is to be judged on this offense based only on the evidence that is submitted to you regarding this offense and that alone.

¶16 The jury found Erickson guilty. Erickson moved for a new trial on the same grounds as the motion for mistrial, which was denied. The District Court sentenced Erickson to a five-year commitment to the Department of Corrections with no time suspended.

## STANDARD OF REVIEW

¶17 "We review a district court's denial of a motion for a mistral for abuse of discretion. This Court applies a deferential standard to the district court because the trial judge is in the best position to decide on the motion." *State v. Krause*, 2021 MT 24, ¶ 11, 403 Mont. 105, 480 P.3d 222 (citations omitted). A district court abuses its discretion when it "acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice." *State v. Zimmerman*, 2018 MT 94, ¶ 13, 391 Mont. 210, 417 P.3d 289 (citation omitted).

## DISCUSSION

¶18 *Did the District Court err by denying Erickson's motion for mistrial based upon the prosecutor's "felony probation" comment during opening statement, and a remark about Erickson's prior prison incarceration by a prosecution witness?*

¶19 A defendant has a constitutional right to a fair trial by an impartial jury. U.S. Const. amend. VI; Mont. Const. art. II, § 24. Prosecutorial misconduct "'may be grounds for reversing a conviction and granting a new trial if the conduct deprives the defendant of a fair and impartial trial.'" *State v. Lawrence*, 2016 MT 346, ¶ 13, 386 Mont. 86, 385 P.3d 968 (quoting *State v. Hayden*, 2008 MT 274, ¶ 27, 345 Mont. 252, 190 P.3d 1091). When considering a prosecutor's conduct, we employ a two-step process to evaluate whether a

8

district court abused its discretion in denying a defendant's motion for a mistrial: "First, the Court considers whether the prosecutor's conduct was improper; if so, we consider whether the improper conduct prejudiced the defendant's right to a fair trial." *Krause*, ¶ 25 (citation omitted).

¶20 A prosecutor acts improperly by bringing to the jury's attention matters the prosecutor "knows to be inadmissible." *Krause*, ¶ 26. Here, the prosecutor clearly acted to refer to inadmissible evidence regarding the nature and seriousness of Erickson's criminal record. The same prosecutor had represented to the District Court during the limine hearing that the State "ha[d] no interest" in conveying the reasons Erickson was on probation, and only wanted to explain that Erickson was on probation and regularly reported to his probation officer, the alleged victim of the offense. This request was reasonable given the circumstances of the charge, and the District Court granted it under the limitations the prosecutor had proposed. As Erickson states in his briefing, "The only purported reason to tell the jury [Erickson] was on probation at all was to explain his relationship to McCrea and what he was doing at her office on the day of the incident. That purpose was satisfied when the prosecutor said, 'He's on probation.'" Yet, the prosecutor used his opening statement to violate the very limits he had proposed.

¶21 Erickson was on trial for assaulting a peace officer, a felony offense. The prosecutor brought attention to Erickson's criminal history for no other purpose than to define him as a prior felon, in violation of the purpose of M. R. Evid. 404(b) ("[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith"); *see State v. Derbyshire*, 2009 MT 27, ¶ 21, 349 Mont. 114, 201

9

P.3d 811 (quoting *State v. Tiedemann*, 139 Mont. 237, 242, 362 P.2d 529, 531 (1961)) (proof of prior crimes may not "'be offered if it only tends to create a prejudice against the accused in the minds of the jury'"). The intended inference was obvious and improper—that Erickson's felony history made him a bad person with a propensity to commit further crimes, such as the current charged felony. There is no other logical explanation for the comment, and the State does not attempt to defend it. The comment was unnecessary, and therefore "only tend[ed] to create a prejudice against [Erickson] in the minds of the jury." *Derbyshire*, ¶ 21. The State offers that the prejudice created by the comment is lessened because the prosecutor did not specify the type of felony, or whether it was violent or nonviolent. We agree with Erickson, however, that the unspecified remark invited the jury to speculate about the nature of Erickson's prior felony, including to assume—incorrectly—that his previous conviction had been for a violent offense similar to the current charge.

¶22    Before considering the prejudicial effect, we turn to the second challenge to the prosecutor's conduct—the questions to McCrea that led to her revealing Erickson's prison history. Erickson argues McCrea had "already established" her apprehension of bodily harm from his actions with the knife, and that the evidence about the threats he had made while in prison was neither "salient" nor "probative" to McCrea's reasonable apprehension or any other issue in dispute. The State concedes McCrea's testimony on this point violated the limine order, but argues, "McCrea's statement was unresponsive to the prosecutor's question and the prosecutor had previously warned McCrea not to discuss Erickson's prison status."

10

¶23 To prove the charge, the State needed to prove Erickson "purposely or knowingly" caused McCrea "reasonable apprehension of serious bodily injury" by use of the knife. Section 45-5-210, MCA. Earlier in her testimony, McCrea stated she did not recall if Erickson had further elaborated on his comment that he would harm counselors if he was forced to go back to treatment. The prosecutor's questioning both before and after McCrea's remarks about Erickson's prison behavior shows he was attempting to have McCrea clarify her earlier statement, asking, "Isn't it true that [Erickson] had threatened the people [in ITU], said that he would harm them?" McCrea did supplement her earlier answer, stating, "He made a comment, something about he barely made it through the program because of harming the counselors." Absent the inadmissible detail about Erickson's prison history, the testimony concerned McCrea's knowledge of Erickson's history of making threats and was relevant to whether McCrea reasonably experienced apprehension of serious bodily injury. As noted by the District Court, "[witnesses have] got to be able to say everything that happened and also that the officers have to be able to say whether they were afraid and why." In addition, Erickson's primary defense was that he did not intend for the officers to feel threatened by his actions, and therefore he did not act "purposely or knowingly" to cause fear by pulling out the knife. If Erickson had indeed told McCrea he had threatened his former counselors, that evidence was relevant to support a finding he had acted purposely or knowingly to cause her fear, with his earlier statement potentially bolstering his action of pulling out the knife.

¶24 However, the prosecutor initiated this inquiry by reference to the "ITU" without giving any context, without even explaining what the letters stood for, effectively

11

prompting McCrea to fill in the context, particularly that ITU stood for Intensive Care Unit and was located at the Montana State Prison. The prosecution offered no explanation for the "upgrade" it asked about. We find it difficult to interpret the prosecution's questions that "he said he was in ITU?" and "that would be an upgrade from what he was doing?" as anything other than an attempt to elicit improper and irrelevant information about Erickson's prior time in prison and his more intensive treatment there. While the evidence was potentially relevant, the questioning was conducted in a manner that violated the limine order.

¶25 Having determined the prosecutor acted improperly in at least two instances, we consider whether the conduct prejudiced Erickson's right to a fair and impartial trial. *Krause*, ¶ 25. Our inquiry includes:

> Where there is a reasonable possibility that inadmissible evidence might have contributed to the conviction, a mistrial is appropriate. In determining whether a prohibited statement contributed to a conviction, we consider the strength of the evidence against the defendant, the prejudicial effect of the testimony, and whether a cautionary instruction could cure any prejudice.

*State v. Bollman*, 2012 MT 49, ¶ 33, 364 Mont. 265, 272 P.3d 650 (citations omitted); *see also*, *State v. Michelotti*, 2018 MT 158, ¶ 24, 392 Mont. 33, 420 P.3d 1020.

¶26 As Erickson notes, whether he acted purposely or knowingly was "the only element of the crime the defense seriously disputed" at trial. He argues, "Although there may have been sufficient evidence to support the jury's guilty verdict, the evidence of guilt was not overwhelming." Our view differs—the evidence against Erickson was undeniably strong. Erickson admitted to twice pulling out a knife and pointing it in the direction of McCrea and other officers, forcing a standoff that threatened violence toward them. McCrea was

without her service weapon and testified extensively about her reasonable apprehension. The admissible evidence presented by both parties demonstrated Erickson's intent, or inferences of it, including testimony by Erickson. More to the point, evidence of guilt does not have to be "overwhelming" or undisputed to defeat a motion for mistrial. *State v. Partin*, 287 Mont. 12, 18, 21, 951 P.2d 1002, 1006-1007 (defendant's conviction was reversed because the evidence was "weak and conflicting," with no eyewitness testimony and "the only link between [the defendant] and the offense" was an officer's testimony which contained inadmissible references to prior bad acts); *Michelotti*, ¶ 24 (denial of mistrial affirmed despite improper admission of evidence because there was no reasonable possibility it contributed to defendant's conviction supported by "strong" evidence); *Bollman*, ¶ 34 (same). There was ample evidence of Erickson's guilt for the jury to convict without consideration of the inadmissible statements.

¶27 We recognize that testimony about prior crimes is inherently prejudicial. "If it were not, there would be no reason for a motion in limine to preclude such evidence." *Partin*, 287 Mont. at 20, 951 P.2d at 1007. However, our consideration is of the prejudicial *effect* of the improper statements, not simply whether the statements are themselves prejudicial. *Bollman*, ¶ 33; *Michelotti*, ¶ 24. The context of Erickson's case in its entirety diminishes the prejudice of the improper statements. From the admissible evidence, as explained by the District Court, "[The jury was] already going to inevitably know that he's on probation, that he's using methamphetamine and that he's carrying a knife." McCrea's reference to meeting with Erickson for probation appointments "since his release" and Erickson's statement to her that "he wasn't going back" required little imagination to understand he

had previously been incarcerated, whether in jail or prison, and this was an inevitable inference from the circumstances of the case. Then, there was ample evidence of Erickson's violent actions in the probation office, lessening the potential that the jury would improperly find him violent based on his prior felony conviction. Finally, the District Court's cautionary instruction addressed the main prejudice concern—that the jury would use the improper statements to convict Erickson based on perceived criminal propensity. The instruction prohibited the jury from using the information that Erickson was on probation, which necessarily included the information that he had previously been convicted, "to assume that somehow the defendant is more likely to be guilty of this offense . . . He is to be judged on this offense based only on the evidence that is submitted to you regarding this offense and that alone." We presume that the jury upholds its duty and follows a district court's instructions. *Michelotti*, ¶ 23. In light of these circumstances, we conclude the prosecutor's improper actions did not prejudicially impact Erickson's right to a fair and impartial trial.

¶28  "'Because the trial court is in the best position to observe the jurors and determine the effect of questionable statements . . . it is given a latitude of discretion in its rulings on motions for mistrial based on such statements.'" *State v. Criswell*, 2013 MT 177, ¶ 51, 370 Mont. 511, 305 P.3d 760 (quoting *State v. Dubois,* 2006 MT 89, ¶ 61, 332 Mont. 44, 134 P.3d 82). We conclude that the District Court did not abuse its discretion in denying the motion for mistrial.

¶29  However, we once again are compelled to emphasize that a prosecutor "must be held to a standard commensurate with his or her position." *Lawrence*, ¶ 20. The

14

prosecution's task is unique because, more than merely representing a party to a controversy, it is the prosecutor's job to seek justice, not simply to win cases. "'[I]t is as much [the prosecutor's] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.'" *Lawrence*, ¶ 17 (quoting *Berger v. United States*, 295 U.S. 78, 88, 55 S. Ct. 629, 633 (1935)). Here, the prosecutor failed in this duty.

¶30 Affirmed.

/S/ JIM RICE

We concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR