FILED

02/06/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0041

DA 22-0041

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 21N

STATE OF MONTANA,

     Plaintiff and Appellee,

  v.

JAMES MICHAEL PARKER,

     Defendant and Appellant.

APPEAL FROM:   District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. BDC-18-687
Honorable Elizabeth A. Best, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

     Caitlin Boland Aarab, Boland Aarab PLLP, Great Falls, Montana

     For Appellee:

     Austin Knudsen, Montana Attorney General, Tammy K Plubell, Assistant Attorney General, Helena, Montana

     Joshua Racki, Cascade County Attorney, Jennifer Quick, Deputy County Attorney, Great Falls, Montana

Submitted on Briefs:  November 29, 2023

Decided:  February 6, 2024

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion. It shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      A Cascade County jury convicted James Michael Parker of deliberate homicide for the 2018 killing of Lloyd Geaudry. Parker appeals, claiming that the District Court improperly rejected a proposed accomplice jury instruction and that prosecutorial misconduct requires a new trial. We affirm.

¶3      In the early morning of March 23, 2018, two groups of men met in a park behind Great Falls High School to engage in a fight. Witness accounts of who participated in the melee differ. In briefing, however, Parker and the State agree that one group consisted of Parker, Collin Brown, Tim Hanson, Mike Perez, Matt Swett, and Brian McGillis. The other group included Geaudry, Dakota Gopher, Tony Nava, Nate Nava, and Chris Ledeau. Although members of both groups understood that the fight would include "no weapons"—which messages between Parker and LeDeau directed—the record indicates that Parker arrived at the fight with a hatchet, and Gopher carried a large wooden club. Fighting between the parties lasted only for a few minutes. At the end of the brawl, Geaudry lay motionless on the ground with a large and deep cut across the back of his head and neck.

¶4 The State charged Parker with one count of deliberate homicide, two counts of assault with a weapon, and one count of tampering with witnesses or informants. Only Parker was charged in connection with the fight. In pretrial proceedings, Parker moved to dismiss the deliberate homicide charge. He claimed that § 46-16-213, MCA, which requires that corroborating evidence support a conviction secured on the testimony of a witness who is responsible or legally accountable for the same offense, prevented him from being convicted on the testimony of the other eyewitnesses to the fight. The District Court denied his motion.

¶5 Prior to trial, the District Court ordered that Parker be allowed to wear street clothes when in the presence of potential jurors and that he would not be shackled or restrained. During the jury selection process, however, Parker was escorted to and from the courtroom by uniformed guards wearing vests identifying them as "Detention Officer[s]." Initially, during breaks in the proceedings, potential jurors were able to see Parker being taken to and from a holding cell area by the guards. Parker moved for a mistrial based on unfair prejudice. The District Court took immediate action to make sure Parker was not escorted in while jurors could see him and denied Parker's motion, reasoning that any prejudice was momentary and immediately corrected.

¶6 The State called all nine of the known participants in the brawl to testify at trial. Although none of the men testified to seeing Parker deliver the fatal blow to Geaudry, McGillis testified to seeing Parker carrying the weapon earlier in the evening; Hanson testified that Parker had referred to the hatchet as his "self-defense;" Tony Nava stated that

3

during the fight Parker struck him with an object that was "very hard;" and Gopher recounted that he was forced to use the night club he was carrying to stop Parker from striking him with the hatchet, after Geaudry already was motionless on the ground. Recall that this all occurred within minutes.

¶7 In addition to the eyewitness testimony, the State presented blood evidence showing a high probability that Geaudry's blood was on Parker's shoes; security camera footage showing Parker purchasing the hatchet at a local store; and the sweater Tony Nava was wearing during the fight that had a large cut in it consistent with Tony's testimony. Although Parker did not testify at trial, he did testify during a pretrial hearing. Parker admitted there that he brought the hatchet to the fight but claimed he was not near Geaudry during the fight. Parker's hearing testimony was admitted at trial.

¶8 As part of their proposed instructions submitted prior to trial, Parker's attorneys requested that the jury be instructed to distrust the testimony of McGillis, Swett, Hanson, and Brown, as they were witnesses legally accountable for the charged offense. For the reasons he raised in his motion to dismiss, Parker argued that the instruction was proper. During the final settlement of instructions, the following colloquy occurred between the District Court and Parker's attorney:

> THE COURT: Defendant's No. 6 through 9, I do want to discuss this. I have looked at the cases. I am not convinced that this -- these instructions, with any modification, are appropriate. All of them talk in terms of another person being legally accountable for the conduct of the Defendant, and I don't think that's consistent with the Defendant's theory. I have asked Jane to circulate the most recent version, which refers specifically to only Counts 2 and 3, which is what our decision was last week -- assault with a weapon. So I want to hear from you. That is the only version of this that I'm willing to discuss.

4

I still think it's inconsistent, but I want to hear from all of you. So, Ms. Gordon?

MS. GORDON: You Honor, we will withdraw all of those accountability instructions. That's just not the way the evidence ended up coming out, so it's just, sort of, why we had it in there. That's not how it came out. We'll withdraw.

The District Court's reference to "our decision last week -- assault with a weapon" did not elaborate, but the final jury instructions did not include a witness-legally-accountable instruction for any of Parker's charges.

¶9    Following the State's case-in-chief, the Defense rested without presenting any evidence or testimony. During her closing argument, the prosecutor, Ms. Quick, commented on the testimony of several witnesses. While recounting the testimony of Gopher, Quick said, "[w]hat you heard is the truth. [Gopher]'s statement is truthful." Parker's attorney immediately objected; the court sustained. Shortly thereafter, still recalling Gopher's testimony, Quick said, "[d]efense counsel made him -- a big deal about him being in jail on some unrelated offense, and I submit to you that that does not render him incapable of telling the truth." Parker's attorney again objected; the court again sustained the objection. A few moments later, describing the testimony of Swett, Quick characterized the Defense's cross-examination as an attempt to isolate and twist Swett's words. Finally, Quick presented a PowerPoint slide to the jury which included text, referring to statements made by LeDeau, which read, "[w]hat motive does [LeDeau] have to lie to you?" and, "[he] nonetheless got up there and told the truth." Because the Judge could not see the slideshow, Parker's attorney read the text to the Judge and again objected;

5

the court again sustained.  Arguing misconduct by Quick, Parker moved for a mistrial.  The District Court denied Parker's motion but gave the jury the following instruction:

INSTRUCTION NO. 38

The Court has found that on occasion the prosecutor improperly expressed her own opinions on witness credibility, or vouched for them.  You are instructed to disregard any such personal opinions of the prosecutor about credibility of witnesses.

The Court has further found that on occasion the prosecutor's argument was an attack on the personal integrity of defense counsel.  This is improper, and you are to disregard such attacks.

¶10    Parker was convicted of deliberate homicide.[1]  He now appeals the District Court's denial of his motions for mistrial and the court's refusal to include the witness-legally-accountable instruction.

¶11    The district court has broad discretion to determine how to instruct the jury.  *State v. Courville*, 2002 MT 330, ¶ 15, 313 Mont. 218, 61 P.3d 749 (citing *State v. Hall*, 1999 MT 297, ¶ 39, 297 Mont. 111, 991 P.2d 929).  In criminal cases, jury instructions must fully and fairly instruct the jury on the applicable law.  *State v. Charlo-Whitworth*, 2016 MT 157, ¶ 7, 384 Mont. 50, 373 P.3d 845 (citing *State v. Allen*, 2010 MT 214, ¶ 22, 357 Mont. 495, 241 P.3d 1045).  A district court's failure to properly instruct the jury is reversible only if the error prejudicially affects the defendant's substantial rights.  *State v. Goulet*, 283 Mont. 38, 41, 938 P.2d 1330, 1332 (1997).

---

[1] Parker also was convicted on one count each of assault with a weapon and of tampering with evidence or informants.  Those charges are not at issue on appeal.

¶12     Parker argues that the District Court abused its discretion when it refused to give a witness-legally-accountable instruction to the jury. Parker claims that his conduct supported only a charge of deliberate homicide under § 45-5-102(1)(b), MCA, Montana's felony murder statute, and not § 45-5-102(1)(a), MCA, Montana's general homicide statute. Although the State chose not to charge any other person involved in the fight, Parker claims that, at a minimum, the men on his side of the brawl also were liable for felony murder under § 45-5-102(1)(b), MCA. Parker argues that because the other men involved in the fight were liable for the same offense and therefore had a strong incentive to testify against him, the court should have included the witness-legally-accountable instruction. Parker claims that by excluding his proposed instruction, the District Court allowed the State to convict him solely on inferences drawn from the uncorroborated testimony of witnesses who also were legally accountable for the same crime—a violation of § 46-16-213, MCA. Finally, Parker argues that when his attorney withdrew the proposed witness-legally-accountable instruction, she believed that she was doing so only with respect to the assault with a weapon charges, but that the instruction should have been given for the homicide charge.

¶13     In response, the State argues that Parker withdrew his proposed instruction and therefore did not preserve the issue for appeal. Even if the instruction were applicable in this case, the State argues, Parker's rescission of the proposed instruction and failure to make a timely objection to the court's error constitutes Parker's acquiescence in that error. Further, the State argues that because Parker has not asked this Court to review the District

Court's decision under plain error review, he has not properly raised the issue on appeal. Lacking sufficient clarity in the record, and giving Parker the benefit of the doubt, we consider his claim on the merits.

¶14 A person cannot be convicted of a crime solely on the uncorroborated testimony of witnesses who are legally accountable for the same offense. Section 46-16-213, MCA. When proper, the district court must instruct the jury that "the testimony of a person legally accountable for the acts of the accused ought to be viewed with distrust." Section 26-1-303(4), MCA. The witness-legally-accountable instruction presupposes the existence of an accomplice to an offense. *Charlo-Whitworth*, ¶ 12. Where a defendant claims that he did not commit a charged crime, he cannot also ask the court to instruct the jury that a testifying witness aided him in committing that crime—which he claims he did not commit. *Charlo-Whitworth*, ¶ 12 (citing *State v. Hall*, 2003 MT 253, ¶ 30, 317 Mont. 356, 77 P.3d 239 [hereinafter *Timothy Hall*]). Where a "defendant claims he did not do it, he was not there, and is not culpable or responsible, so be it. But then in such an event, [the testifying witness] is not an accomplice, nor is he legally accountable within the meaning of the instruction. He just did it." *Charlo-Whitworth*, ¶ 13 (citing *Timothy Hall*, ¶ 28) (internal quotations omitted).

¶15 In *Timothy Hall*, a defendant was convicted of misdemeanor and felony theft for stealing approximately $40,000 worth of camera equipment. *Timothy Hall*, ¶¶ 10, 16. Following the execution of a search warrant, authorities found the equipment in the home the defendant shared with another man. *Timothy Hall*, ¶ 13. At trial, Hall's defense rested

8

on his claim that his roommate was the sole perpetrator of the theft. *Timothy Hall*, ¶ 26. Hall requested, nonetheless, that the jury receive a witness-legally-accountable instruction. *Timothy Hall*, ¶ 27. The district court denied Hall's request, and we affirmed. *Timothy Hall*, ¶ 30. We noted that "[n]ormally, whether a party was or was not an accomplice is reserved for the province of the jury." *Timothy Hall*, ¶ 30. Where a defendant claims innocence and the evidence does not support witness accountability, however, it is improper to give the instruction. *Timothy Hall*, ¶ 30.

¶16     *Timothy Hall* is instructive here. The State charged Parker with deliberate homicide under § 45-5-102(1)(a), MCA. Under the statute, the State had to prove that Parker "purposely or knowingly cause[d] the death of another human being." Section 45-5-102(1)(a), MCA. As Parker concedes in briefing, his defense to the charge was that he had given the hatchet to another member of the group and did not deliver the fatal blow to Geaudry. Parker points to no record evidence showing that one of the other participants in the fight had the hatchet or delivered the strike. The other participants in the fight were adamant that it was to be a fistfight, which Parker had confirmed in an earlier text message. Just as in *Timothy Hall*, Parker attempts to have it both ways, claiming he is not legally accountable for the homicide and simultaneously claiming that the jury should be instructed to distrust his accomplices. As in *Timothy Hall*, we reject this argument. Parker's defense that he did not commit the crime makes accomplice liability inapplicable to this case, and a witness-legally-accountable instruction would not have been proper. *See* § 26-1-303(4), MCA; *Charlo-Whitworth*, ¶ 12.

9

¶17     Parker maintains however, that because the State *could have* charged the other participants with felony-murder under § 45-5-102(1)(b), MCA, they should have been treated as accomplices to the homicide. Under the felony-murder rule, a person commits the offense of deliberate homicide if they are:

> legally accountable for the attempt or commission of . . . assault with a weapon, aggravated assault, or any other forcible felony and in the course of the forcible felony or flight thereafter, the person or any other person legally accountable for the crime causes the death of another human being.

Section 45-5-102(1)(b), MCA. Parker insists that the State's charging decision should not dictate the instructions applicable to the evidence. But this is not the argument he made to the trial court when he withdrew the proposed instruction and offered no additional rationale for limiting it to the deliberate homicide charge. As discussed above, the argument also does not reflect his theory of defense at trial. Given Parker's steadfast denial of the charge and the evidence as a whole, an instruction grounded in the felony-murder rule would have been confusing at best. The instructions given fully and fairly apprised the jury of the law applicable to the case as it was charged and presented. On the basis of the trial record summarized above, we conclude further that failure to give the accomplice instruction did not substantially prejudice Parker's right to a fair trial.

¶18     Parker also claims the District Court abused its discretion by denying his motion for mistrial when the prosecutor repeatedly vouched for the credibility of witnesses and when the jury saw evidence of Parker's incarceration. This Court reviews a district court's decision to deny a motion for a mistrial for abuse of discretion. *State v. Pierce*, 2016 MT 308, ¶ 17, 385 Mont. 439, 384 P.3d 1042. A court abuses its discretion when it acts

arbitrarily, without employing conscientious judgment, or exceeds the bounds of reason, resulting in substantial injustice. *State v. Michelotti*, 2018 MT 158, ¶ 8, 392 Mont. 33, 420 P.3d 1020.

¶19 Parker points to Quick's repeated bolstering of witnesses in her closing argument as proof that his right to a fair trial was infringed. Parker further highlights the instances in which potential jurors were permitted to see him being transported to a holding cell to argue that the prejudice was so substantial that a new trial is warranted. In response, the State argues that Quick's remarks were permissible comments on inferences that the jury could draw from witness testimony, and the court cured any potential prejudice with its supplemental instruction. The State also points to the other evidence of guilt presented at trial and argues that Parker was not prejudiced by any of Quick's comments.

¶20 A criminal defendant is guaranteed the right to a fair trial under both the Sixth Amendment to the United States Constitution and Article II, Section 24 of the Montana Constitution. *State v. Hayden*, 2008 MT 274, ¶ 27, 345 Mont. 252, 190 P.3d 1091. As part of the right to a fair trial, it generally is within the exclusive province of the jury to determine the credibility of witnesses. *State v. St. Germain*, 2007 MT 28, ¶ 27, 336 Mont. 17, 153 P.3d 591. Accordingly, this Court has made clear that it is improper for a prosecutor to offer personal opinions about the credibility of witnesses. *Hayden*, ¶ 28; *State v. Stringer*, 271 Mont. 367, 380, 897 P.2d 1063, 1071 (1995) (citations omitted); *State v. Thorp*, 2010 MT 92, ¶ 24, 356 Mont. 150, 231 P.3d 1096 (citing *Hayden*, ¶¶ 26, 28). We

11

have explained that when a prosecutor comments on the credibility of witnesses, her actions are improper because:

> (1) A prosecutor's expression of guilt invades the province of the jury and is an usurpation of its function to declare the guilt or innocence of an accused; (2) the jury may simply adopt the prosecutor's views instead of exercising their own independent judgment as to the conclusions to be drawn from the testimony; and (3) the prosecutor's personal views inject into the case irrelevant and inadmissible matters or a fact not legally proved by the evidence, and add to the probative force of the testimony adduced at the trial the weight of the prosecutors' personal, professional, or official influence.

*Stringer*, 271 Mont. at 381, 897 P.2d at 1071-72 (citation omitted).

¶21 A prosecutor's comments on the credibility of witnesses can constitute reversible error. *See Hayden*, ¶ 33. Misconduct alone, however, is insufficient to overturn a conviction; a defendant must show that the misconduct violated his substantial rights. *State v. McDonald*, 2013 MT 97, ¶ 10, 369 Mont. 483, 299 P.3d 799 (internal quotation and citations omitted). When determining whether a defendant's substantial rights have been violated, we consider the offending conduct within the context of the prosecutor's entire argument and do not presume prejudice. *State v. Smith*, 2021 MT 148, ¶¶ 42, 48, 404 Mont. 245, 488 P.3d 531. We also consider any curative instructions given by the district court. *See State v. Wing*, 2008 MT 218, ¶ 34, 344 Mont. 243, 188 P.3d 999 (citation omitted).

¶22 As evidenced by the District Court's decision to issue Instruction No. 38, and the forceful language it contained, the District Court determined that Quick's comments improperly invaded the exclusive role of the jury to determine the credibility of witnesses. But Parker has failed to show that Quick's comments, in the context of the entirety of the proceedings, prejudiced his right to a fair trial. The State presented evidence that Parker

12

was the person who purchased the hatchet, brought it to the fight, intended to use the weapon as his own "self-defense," assaulted Tony Nava with it, and attempted to hit Gopher with it after Geaudry already had been attacked. Parker highlights Quick's improper statements with respect to the testimony of Gopher, Swett, and LeDeau. Even if we were to discount the testimony of those witnesses entirely, the State still presented testimony from several other eyewitnesses that Parker had the weapon before, during, and after the short-lived fight. Additionally, serological evidence showed a high likelihood that Geaudry's blood was on Parker's shoe, despite Parker's claims that he was never near Geaudry during the fight. Quick properly pointed to all of this evidence during her closing argument. Given the overwhelming weight of the evidence, Parker has not demonstrated any prejudicial effect resulted from Quick's statements, even if improper. *See State v. Bollman*, 2012 MT 49, ¶ 33, 364 Mont. 265, 272 P.3d 650 (citation omitted). Furthermore, any such prejudicial impact was remedied by the District Court's curative instruction. The District Court made clear to the jury that it was not to consider any opinions offered by Quick on the credibility of witnesses. The jury also was instructed that Quick's statements about opposing counsel were improper.

¶23 We conclude finally that Parker has failed to show any prejudice due to the District Court's denial of his motion to dismiss when potential jurors were able to see him being escorted to a holding area. Although Montana recognizes a right to be "free of shackles during trial," that right does not include a right to be free from shackles while being transported to and from trial. *Porter v. State*, 2002 MT 319, ¶ 28, 313 Mont. 149, 60 P.3d

13

951 (quoting *State v. Baugh*, 174 Mont. 456, 462-63, 571 P.2d 779, 782-83 (1977)).  A juror "momentarily and inadvertently" viewing a defendant in restraints does not alone support the granting of a new trial.  *State v. Pendergrass*, 189 Mont. 127, 134, 615 P.2d 201, 205 (1980).  Parker has not presented record evidence of prejudice beyond his assertions that members of the venire *may* have seen him being escorted by guards.  The District Court took prompt remedial action when Parker raised the concern, and he has failed to show that denial of a mistrial prejudiced his substantial rights.  *See Porter*, ¶ 29 (quoting *Pendergrass*, 189 Mont. at 134, 615 P.2d at 205).

¶24    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions.  In light of the entirety of the evidence presented and the court's strong curative instruction, we conclude that it did not act arbitrarily or without conscientious judgment when it denied Parker's motions for a mistrial.  The District Court acted within its discretion when it rejected Parker's proposed instruction and his claim of prosecutorial misconduct.  The judgment is affirmed.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON